HENRY I. SIEGEL COMPANY, INC., Petitioner,

v.

**Edna HOLLIDAY, Respondent.**

No. C-1891.

Supreme Court of Texas.

Jan. 11, 1984.

Rehearing Denied Feb. 22, 1984.

Neel & Sortino, Anthony T. Sortino, Houston, for petitioner.

Hinds & Meyer, Mona Lyman, Houston, Hilgers, Watkins & Kazen, Thomas H. Watkins, Austin, for respondent.

BARROW, Justice.

Petitioner, Henry I. Siegel Co., Inc. (Siegel), sued respondent, Edna Holliday, along with Alfred and Barbara Graham to collect on a sworn account. Siegel is a creditor of now-dissolved Holly Gram, Inc. (Holly Gram). Mrs. Holliday and the Grahams were officers and directors of Holly Gram. Siegel sought to hold the directors personally liable for Siegel's claim against Holly Gram on the basis of the "trust fund doctrine." The trial court, after a non-jury trial, rendered judgment for Siegel against all three officers/directors jointly and severally. Only Mrs. Holliday appealed. The court of appeals reversed that portion of the trial court's judgment imposing liability on Mrs. Holliday and rendered a take-nothing judgment for her. 643 S.W.2d 519. We affirm the judgment of the court of appeals.

Holly Gram was a Texas corporation, which operated a shoe store and two dress shops. After slightly less than one year in business, Mrs. Holliday and the Grahams decided to dissolve the corporation. They agreed, however, to continue the business as sole proprietorships, with Mrs. Holliday taking the assets and liabilities of the shoe store and the Grahams doing likewise with the dress shops. They did not notify the known creditors of Holly Gram of the dissolution as required by Tex.Bus.Corp.Act Ann. art. 6.04 A(2).

It is undisputed that Mrs. Holliday has paid more money in discharge of the debts of Holly Gram than the value of all corporate assets at the time of dissolution. The trial court found those assets were worth about $20,000, and Mrs. Holliday received assets with a value of $10,000. After dissolution, Mrs. Holliday paid a total of $26,000 to various Holly Gram creditors.

The debt sued on by Siegel was for merchandise sold on account to the dress shops. Under the directors' agreement, the Grahams were responsible for payment of that debt, but they were unable to pay it. Although no attempt was made by the directors to pay the debts on any particular basis, it is significant that Siegel makes no allegation that the directors have been guilty of fraud or even favoritism in their payment of corporate debts.

Siegel brought this suit for the remaining balance of $2,087.98 owed by Holly Gram on a trade account. Siegel bases its case for holding Mrs. Holliday personally liable on the trust fund doctrine as presently embodied in Tex.Bus.Corp.Act Ann. art. 6.04 A(3) and Tex.Rev.Civ.Stat.Ann. art. 1302-2.-07 B. Siegel argues that the directors of Holly Gram, upon dissolution, became trustees of the corporate assets. As trustees, Siegel contends, the directors owed a fiduciary duty to see that the assets were applied to the satisfaction of creditors' claims on a pro rata basis. Siegel further urges that the directors were bound to keep records from which each creditor's pro rata share of assets could be determined. Failure to fulfill these responsibilities, the argument concludes, renders each director jointly and severally liable to each creditor for the full amount of the creditor's claim.

■ Article 6.04 A(3) directs that if the assets of a dissolved corporation are inadequate to pay all the corporation's debts *those assets* must be applied, so far as they will go, to the just and equitable payment of debts. Because the matter is not material to our disposition of the case, we assume, without deciding, that the statute dictates a pro rata distribution of corporate assets to creditors in the instant context.[1]

1. Statutes existing since 1871 have been interpreted as requiring a *defunct corporation to* make a pro rata distribution of assets to creditors. *See, e.g., Lyons-Thomas Hardware Co. v. Perry Stove Manufacturing Co.,* 86 Tex. 143, 24 S.W. 16, 19–21 (1893). In 1955, however, the legislature in enacting the Texas Business Corporation Act chose to charge the directors to make a "just and equitable" distribution. Tex. Bus.Corp.Act Ann. art. 6.04 A(3). This is evi-

Article 1302–2.07 B requires the board of directors, inter alia, to make a correct distribution to creditors. Article 1302–2.07 B also contains the trust fund doctrine. In this respect, it provides:

> In the exercise of ... powers [necessary to wind up corporate affairs], the directors and officers shall be trustees for the benefit of creditors, shareholders, members, or other distributees of the corporation and shall be jointly and severally liable to such persons *to the extent of the corporate property and assets that shall have come into their hands.* (emphasis added).

The trust fund doctrine was considered in *Hunter v. Fort Worth Capital Corp.*, 620 S.W.2d 547 (Tex.1981). We determined that under the trust fund doctrine "when the assets of a dissolved corporation are distributed among its shareholders, a creditor of the dissolved corporation may pursue the assets on the theory that in equity they are burdened with a lien in his favor." *Id.* at 550. We further stated that the theory "applies whenever the assets of a dissolved corporation are held by any third party, ... so long as the assets are traceable and have not been acquired by a bona fide purchaser." *Id. Accord Waggoner v. Herring-Showers Lumber Co.*, 120 Tex. 605, 40 S.W.2d 1, 5 (1931); *Lyons-Thomas Hardware Co. v. Perry Stove Mfg. Co.*, 86 Tex. 143, 24 S.W. 16, 20–21, 25 (1893); *Koch v. United States*, 138 F.2d 850, 852 (10th Cir. 1943); Norton, *Relationship of Shareholders to Corporate Creditors Upon Dissolution: Nature and Implications of the "Trust Fund" Doctrine of Corporate Assets,* 30 Bus.Law 1061, 1069–79 (1975).

In *Waggoner,* this Court held that a transfer of the assets of an inactive and insolvent corporation made in an attempt to provide for payment of corporate obligations is made subject to an equitable lien. The Court stated:

> dence that the legislature, presumably possessed of full knowledge of the existing standard, rejected it and opted for a new one. Therefore, the corporation may now have more

We think the board of directors, as directors and trustees, had the right to sell the property to [one or two of the directors] ... to have the debts of the corporation paid; but the property passed ... charged with an equitable lien in favor of the creditors of the corporation dischargeable only upon the payment of the creditors in full or pro rata from the funds received from the corporate property .... [citations omitted]. Moreover, the directors were charged with the duty of seeing that the creditors [are so paid]. ...

*Waggoner,* 120 Tex. 605, 40 S.W.2d at 5. The meaning of the foregoing authorities is unmistakable. The existence of the so-called "trust" relationship in situations controlled by the trust fund doctrine provides no basis for personal liability of directors. It only allows corporate creditors to follow the corporate assets and to subject those assets to the payment of their claims.

Our attention has been directed to several Texas cases that purportedly support Siegel's position. None of the cases cited hold that directors of a defunct corporation may, by virtue of the trust fund doctrine, be held personally liable to corporate creditors in an amount greater than the value of corporate assets received by the directors, nor do any of these cases permit a personal judgment based upon the breach of a fiduciary relationship.

The correct construction of article 1302–2.07 B and article 6.04 A(3) is that the last board of directors of a dissolved corporation is charged with a duty to manage the corporate assets and wind up corporate affairs. Among its duties in this regard is the duty to make a just and equitable distribution of assets to the creditors first and then to the stockholders. If a preferential transfer is made in the course of this distribution, equity, under our statutory trust fund doctrine, will burden the transferred property with an equitable lien.

flexibility in paying its creditors than it had before adoption of the Business Corporation Act.

By virtue of that equitable lien, the excluded creditor may follow the assets preferentially transferred and have them subjected to his claim. This is true so long as the transferred corporate assets are traceable and are not in the hands of a bona fide purchaser. On this basis, personal liability of the director arises only because he has disposed of the assets in such a manner that they cannot be traced or because he has caused a diminution in the value of the assets. *Koch,* 138 F.2d at 852; *Norton, supra* at 1073–74, 1078–79.

■ Article 1302–2.07 B does provide a further basis for personal liability of directors. The statute stipulates that the directors shall be jointly and severally liable for breach of their duty to distributees of the corporation. This liability is limited, however, to the extent of corporate assets that come into their hands. The obvious effect of this provision is to make each director personally liable to the corporation's distributees to the extent of the value of corporate assets received by all the directors. This provides the creditors with an additional remedy apart from their right to subject the corporate assets to their claim. The directors may be held personally liable, but in no case may their joint liability to all creditors exceed the value of the corporate assets that came into their hands by virtue of the dissolution. *White v. Texas Motor Car & Supply Co.,* 228 S.W. 138, 141–42 (Tex.Comm'n App.1921, holding approved) (construing predecessor to article 1302–2.-07).

■ Siegel has made no effort to trace the assets of Holly Gram, but has chosen only to enforce personal liability against Mrs. Holliday. It is undisputed that Mrs. Holliday has paid more to the creditors of Holly Gram than the total value of the corporate assets at dissolution. The limit on her liability has been surpassed, and Siegel cannot hold her personally liable for its claim.

We affirm the judgment of the court of appeals.

RAY, J., dissents with opinion in which SPEARS, J., joins.

RAY, Justice, dissenting.

I respectfully dissent. The majority has reached a result and has adopted reasoning to which I cannot subscribe. Under the majority's opinion, directors of a dissolved corporation will be able to escape their statutorily-imposed fiduciary duty to creditors; they will be free to pick and choose among the creditors they wish to pay, secure in the knowledge that creditors who do not receive their pro rata share will have no claim against them individually so long as the directors pay out at least an amount equal to the corporate assets on hand at dissolution. This result is patently inequitable, and is unnecessary under the pertinent statutes.

In its opinion, the court of appeals erroneously analyzed this case as if it were an alter-ego case. This case, however, does not involve the alter-ego doctrine. Rather, it involves an altogether different doctrine, a doctrine originally of equity but now embodied in statute (at least as it applies to dissolved corporations), a doctrine long known in Texas jurisprudence as the "trust fund doctrine." It was on that basis that this case was argued by Siegel before the trial court and the court of appeals, and it is on that basis that I would reverse the court of appeals.

This case involves no new departure in Texas law. For almost a century, this court has held the equitable trust fund doctrine to be the law of this state. This doctrine, stated in general terms, is to the effect that whenever a corporation (1) is dissolved, (2) becomes insolvent and ceases doing business, or (3) simply ceases doing business with no intention to resume business, then the assets of the corporation become a "trust fund" for the benefit, primarily, of creditors. The officers and directors hold the corporate assets in trust for the corporate creditors. They are placed in a fiduciary relation to and owe a fiduciary duty to the creditors. That duty obliges them to administer the corporate assets for the benefit of the creditors and to ratably distrib-

ute them. The breach of that duty gives rise to a cause of action against the officers and directors which can be prosecuted directly by the creditors.[1]

The majority asserts that "the trust fund doctrine provides no basis for personal liability of directors." They assert that the trust fund doctrine merely burdens inequitably distributed property with an equitable lien, and thus "only allows corporate creditors to follow the corporate assets and to subject those assets to the payment of their claims." But then the majority goes on to state (rather inconsistently) that "personal liability of the director [may arise] because he has disposed of the assets in such a manner that they cannot be traced or because he has caused a diminution in the value of the assets." In all these statements,[2] the majority has unfortunately confused *director* liability under the trust fund doctrine with *shareholder* liability. The distinction is critical because of the difference in position of shareholders and directors vis-a-vis creditors. This distinction was pointed out in Friedlander, *Post-Dissolution Liabilities of Shareholders and Directors for Claims Against Dissolved Corporations,* 31 Vand.L.Rev. 1363, 1368 (1978):

> Receipt of the distributed assets creates no personal liability for a shareholder unless the shareholder 'has disposed of the trust fund in such a manner that it cannot be followed or where he has caused a

diminution in the value of the trust assets.'

The trust fund theory applies *differently* to directors of the dissolved corporation. Since shareholders are not trustees, they have no fiduciary duties and, as noted above, they are not personally liable except in special circumstances. Under the trust fund theory, shareholder liability arises because the shareholders possess the distributed assets to which an equitable lien has attached. The liability of distributing directors for claims against the dissolved corporation *arises because they are trustees* for creditors and shareholders in settling the dissolved corporation's affairs. Thus, director liability is personal and exists even though the director no longer possesses any of the dissolved corporation's assets. The liability arises, however, *only if there is a breach of the fiduciary duties* owed to creditors and shareholders while the director is acting in his capacity as trustee.

> The primary fiduciary duty directors owe to creditors is to make adequate provision for payment of creditors' claims against the dissolved corporation. If directors perform this duty, they are not liable to their dissolved corporation's creditors. (emphasis added).

Friedlander, p. 1368.

The majority also insists that article 1302–2.07[3] limits director liability such that

1. See *Waggoner v. Herring-Showers Lumber Co.,* 120 Tex. 605, 40 S.W.2d 1 (1931); *Burkburnett Refining Co. v. Ilseng,* 116 Tex. 366, 292 S.W. 179 (1927); *Orr & Lindsley Shoe Co. v. Thompson,* 89 Tex. 501, 35 S.W. 473 (1896); *Lyons-Thomas Hardware Co. v. Perry Stove Mfg. Co.,* 86 Tex. 143, 24 S.W. 16 (1893); *State v. Nevitt,* 595 S.W.2d 140 (Tex.Civ.App.—Dallas 1980, no writ); *Tigrett v. Pointer,* 580 S.W.2d 375 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r.e.); *Fagan v. La Gloria Oil & Gas Co.,* 494 S.W.2d 624 (Tex.Civ.App.—Houston [14th Dist.] 1973, no writ); *Wortham v. Lachman-Rose Co.,* 440 S.W.2d 351 (Tex.Civ.App.—Houston [1st Dist.] 1969, no writ). *See generally,* 20 Tex.Prac. (Hamilton) § 734 (1973 ed. and 1982 supp.); 15 Tex.Jur.3d, *Corporations* § 389 (1981).

2. The majority's citations to *Koch v. United States,* 138 F.2d 850 (10th Cir.1943); Norton,

*Relationship of Shareholders to Corporate Creditors Upon Dissolution: Nature and Implications of the "Trust Fund" Doctrine of Corporate Assets,* 20 Bus.Law. 1061 (1975); as well as their quote from *Hunter v. Fort Worth Capital Corp.,* 620 S.W.2d 547 (Tex.1981), are inapposite, too, because they deal with *shareholder* liability, not *director* liability.

3. Article 1302–2.07 provides, in pertinent part: During such period [after dissolution], the board of directors ... shall continue to manage the affairs of the corporation with a limited purpose or purposes specified in this Article and ... shall be trustees for the benefit of creditors, shareholders, members, or other distributees of the corporation and shall be jointly and severally liable to such persons *to the extent of the corporate property and assets that shall have come into their hands.* (Emphasis added).

a director may not be held personally liable for breach of his fiduciary duty so long as he pays out at least an amount equal to the corporate assets ón hand at dissolution. This interpretation of article 1302–2.07, it seems to me, effectively emasculates the trust fund doctrine as it has long existed and nullifies the fiduciary duty which the same article imposes on directors. I cannot believe the legislature intended this. It seems to me that a preferable reading of the pertinent clause (see footnote 3) is that it merely restates the basic principle that in normal circumstances the officers and directors of a dissolved corporation need only ratably distribute the assets on hand at dissolution and nothing more.

The statutes involved in this case, articles 6.04 and 1302–2.07, embody the trust fund doctrine as that doctrine existed in equity, and the majority concedes as much. The purpose of the trust fund doctrine was, and is, to assure the fair, equitable treatment of creditors upon dissolution. The statutes achieve this by requiring dissolved corporations to pay off creditors on a pro rata basis, by making directors *trustees* for the benefit of creditors, and by making directors jointly and severally liable for *breach of their fiduciary duties to creditors.* Under the majority's reading of the statutes, however, they have no effect in a situation such as we have in this case. Under their reading, the directors upon dissolution will be able to prefer one creditor over another, which is exactly the result the trust fund doctrine seeks to prevent. It is not unfair or unduly harsh to expect directors at dissolution—which is, after all, a unique time in the life of a corporation—to use *reasonable care* to pay off creditors equally. The corporate veil need not be as broad as the majority would have it. The majority's opinion allows corporate directors to avoid their statutorily imposed fiduciary duty and unnecessarily burdens creditors. Their opinion gives directors carte blanche to prefer those creditors with whom they want to remain on good terms (which may very well have been the case with Mrs. Holliday and her co-directors).

I remain convinced that the majority opinion does not state the law as intended by the legislature. It is not a good idea to hold that articles 6.04 and 1302–2.07 have no effect in a case such as this, where the directors haphazardly ended the life of their corporation without making any reasonable arrangements for the pro rata payment of the corporate debts.

SPEARS, J., joins in this dissenting opinion.

## ON MOTION FOR REHEARING

ROBERTSON, Justice, dissenting.

I would grant the motion for rehearing and therefore respectfully dissent. The record reflects that in January of 1980 the Board of Directors of Holly Gram, Inc. adopted a resolution to dissolve the corporation. The three directors, Mr. Alfred Graham, Mrs. Barbara Graham and Mrs. Edna Holliday, decided the two businesses being conducted by Holly Gram, Inc. would be split between the Grahams and Edna Holliday. The Grahams were distributed all assets of the dress shops and were to pay all corporate debts which had arisen from the operation of the dress shops. Similarly, all assets and liabilities associated with the operation of the shoe store were transferred to Edna Holliday. Edna Holliday thereafter notified the creditors of the shoe store of the dissolution and continued to operate the shoe store paying only those debts previously incurred by the shoe store. The creditors of the dress shops, including Siegel, were never notified and received little if any payment.

Article 1302–2.07 B imposes upon directors of a dissolving corporation the duty to hold the corporate assets as trustees for the benefit of creditors. Failure to exercise this duty in a just and equitable manner results in joint and several liability among directors. Tex.Bus.Corp.Act Ann. art. 6.04, subd. A(3) (Vernon 1980). A director displaying preferential treatment among corporate creditors at dissolution of an insolvent corporation will be held personally liable for the amount of corporate assets the

creditor would have otherwise received in a ratable distribution. *Waggoner v. Herring-Showers Lumber Co.,* 120 Tex. 605, 40 S.W.2d 1, 5 (1931); *Tigrett v. Pointer,* 580 S.W.2d 375 (Tex.Civ.App.—Dallas 1978, writ ref'd n.r.e.).

The failure of the directors of Holly Gram, Inc. to make a pro rata distribution of corporate assets to corporate creditors was a breach of their fiduciary duty as statutory trustees. Under these circumstances, Texas case law allows a creditor to hold the directors liable "for that portion of the assets that would have been available to satisfy his debt if they had been distributed pro rata to all creditors." *Tigrett v. Pointer,* 580 S.W.2d 375, 384 (Tex.Civ.App.—Dallas 1978, writ ref'd n.r.e.). Accordingly, I would reverse the judgment of the court of appeals and affirm the judgment of the trial court.