Vincent MENETTI and Felecia Menetti,
Individually, Appellants,

v.

Hilario CHAVERS and Arnitta
Chavers, Appellees.

No. 04–97–00253–CV.

Court of Appeals of Texas,
San Antonio.

April 22, 1998.

David R. DeWall, Law Office of David DeWall, San Antonio, for Appellants.

Hilario and Arnitta Chavers, San Antonio, pro se.

Before HARDBERGER, C.J., and RICKHOFF and DUNCAN, JJ.

## OPINION

HARDBERGER, Chief Justice.

### INTRODUCTION

This is an appeal by individual shareholders from a default judgment against their corporation, Menetti & Co., Inc., and from jury findings that impose individual liability on the shareholders. Vincent and Felecia Menetti assert, inter alia, that the trial court denied them the opportunity to present a defense as to their individual liability claims arising from faulty construction of an addition to the Chaverses' home. The Menettis also claim that they were denied the opportunity to challenge a claim that they were their corporation's alter ego. Appellees, the Chaverses, assert that the Menettis lack standing to assert the bulk of their claims. We hold that the trial court erred in finding the Menettis individually liable for the acts of their corporation because there was legally insufficient evidence to show actual fraud. Therefore, we reverse the judgment and render a decision in favor of the Menettis.

### FACTS

The Chaverses sued Menetti & Co., Inc., and the Menettis individually for damages arising from faulty construction of an addition to the Chaverses' home. They sued under several theories: DTPA, fraud, breach of contract, negligence, and piercing the corporate veil.[1] They also included claims that the corporation had violated the Texas Tax Code.

---

1. To establish individual liability, the Chaverses claimed that the Menettis were the alter egos of their corporation, that the corporation was a sham, that it was formed for an illegal purpose, that the Menettis had violated the Trust Fund Doctrine, and/or that they were guilty of denuding the corporation.

Prior to trial, the attorney hired to represent the Menettis and their corporation requested and was granted leave to withdraw his representation. Sometime after that, the Chaverses moved to show authority, requesting that the trial judge order the corporation to retain the services of an attorney by a "date certain" or have its pleadings stricken. See Dell Dev. Corp. v. Best Indus. Uniform Supply Co., Inc., 743 S.W.2d 302, 303 (Tex. App.—Houston [14th Dist.] 1987, writ denied) (corporation may not represent itself in court). After a hearing at which the Menettis did not appear, the judge issued an order that the corporation retain an attorney within three days of the entry of the order or have its pleadings stricken. The corporation did not appeal this order, and the corporation did not comply within the time period (it did retain a lawyer several months before trial). Although an order decreeing the corporation's pleadings stricken was never entered, this was assumed to have occurred, de facto, in later proceedings.

Trial began on November 6. On November 7, in response to a motion by the Chaverses, the trial judge entered a default judgment against the corporation. Apparently, the judgment had two bases: first, the trial court accepted that the corporation's pleadings had been de facto stricken, based on the prior order that the corporation appear with counsel. Second, the trial court held that the corporation could not defend itself in court because it was behind on its franchise taxes and was thus not a corporation in good standing. The corporation's lawyer asked if the corporation could defend if the taxes were paid the following day; the trial judge refused the request.

At trial, the Menettis presented a defense on damages only. The jury charge instruct-ed the jury that all issues of liability had been found against the defendant corporation and asked the jurors to determine damages. However, the charge also asked the jury to determine the alter ego, sham corporation, denuding, and Trust Fund Doctrine issues as questions of fact. All questions were answered in favor of the Chaverses, and the jury awarded them $137,000. The trial judge reduced this amount to $97,000. After their motion for new trial was refused, the Menettis filed an appeal with this court in the corporation's name. They later asked the court to dismiss the appeal, and they filed a second appeal as individuals.

In eight points of error, the Menettis claim that (1) the trial court erred in refusing to allow the Menettis, individually, to assert defenses on liability or alter ego issues;[2] (2) the trial court erred in entering judgment against the Menettis, because alter ego was not properly established;[3] (3) the trial court erred in entering judgment on the DTPA claims;[4] (4) the trial court erred in entering judgment against the Menettis based on negligence, because there is no negligent breach of contract cause of action; (5) the trial court erred in basing a judgment on denuding, because there was no or insufficient evidence to support the finding; (6) the trial court erred in basing its judgment against the Menettis on any violation of the Trust Fund Doctrine, because such a finding was based on insufficient evidence; (7) the trial court erred in admitting hearsay testimony; and (8) the trial court denied the Menettis their due process right to a fair trial under the state and federal constitutions.

## LIABILITY

### Standing

We first address the Chaverses' claim that the Menettis do not have standing to assert

2. Subsumed in this point are claims that the trial court erred in striking the pleadings based on the corporation's failure to obtain counsel, that the trial court erred in striking the pleadings based on the failure to pay franchise taxes, and that individual liability must be established separate from corporate liability, even if alter ego is established.

3. Subsumed in this point are claims that two of the questions to the jury did not properly submit the issue to the jury and that there is insufficient evidence to establish fraud against Felecia and Vincent Menetti.

4. Subsumed in this point are claims that the wrong statute was relied upon; that notice, proof, and jury questions and answers didn't comply with property code requisites; that, alternatively, additional damages were not authorized as a matter of law; and that the DTPA cause of action sounded in contract and thus was inappropriate under the DTPA.

most of the claims brought in this appeal. The Chaverses assert that, because the Menettis have appealed as individuals, rather than as a corporation, they do not having standing to bring claims as to the merits of the judgment against the corporation. This contention requires us to consider carefully the nature of the suit brought against the corporation and its individual shareholders and the actions taken by the trial court.

Standing to sue exists when a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy. *Sierra Club v. Morton,* 405 U.S. 727, 731, 92 S.Ct. 1361, 1364, 31 L.Ed.2d 636 (1972). On appeal, a party may only complain of error that injuriously affects that party.[5] *Pierson v. Houston Indep. Sch. Dist.,* 698 S.W.2d 377, 381 (Tex.App.—Houston [14th Dist] 1985, writ ref'd n.r.e.); *see also Buchele v. Woods,* 528 S.W.2d 95, 98 (Tex.Civ.App.—Tyler 1975, no writ) ("while it is normally true that a party of record is entitled to appellate review, there is the additional requirement that a party's *own inter-*

*est* must be prejudiced by the decision before he has standing to appeal").

The Chaverses' petition raised both liability claims and claims that would allow them to pierce the corporate veil. In a sense, these are joint claims. The liability of the Menettis individually necessarily depends on a finding of liability against the corporation. However, a finding of liability against the corporation does not necessarily amount to a finding of liability against the Menettis individually. The corporate structure is designed to shield shareholders from just such liability. *See Equinox Enterprises, Inc. v. Associated Media, Inc.,* 730 S.W.2d 872, 877 (Tex.App.—Dallas 1987, no writ) (stating that alter ego is a theory under which individual liability may be imposed when it would not otherwise exist). In other words, the Menettis, as individuals, could not be held liable for the acts of the corporation if the corporate veil were not pierced. Thus, the default against the corporation on the liability issues does not injure or prejudice the Menettis so as to give them standing to complain of that default judgment.[6] *See Shults v. State,* 682

---

5. The Menettis argue that we should find standing under a line of cases holding that a default judgment against a party cannot bind a principal or a guarantor. *See Howze v. Surety Corp. of America,* 584 S.W.2d 263, 265 (Tex.1979); *Mayfield v. Hicks,* 575 S.W.2d 571, 574 (Tex.Civ. App.—Dallas 1978, writ ref'd n.r.e.). These cases cannot support standing in this situation. If the corporate veil is pierced, the shareholders are considered the equivalent of the corporation, not separate parties with individual defenses. The corporation's liability becomes the shareholder's liability absolutely.

6. Our finding that the Menettis do not have standing to complain of the default judgment by no means indicates our approval of the summary disposition of the corporation's defense. We have found no cases to support Judge Peden's striking of the corporation's pleadings on the basis that it did not have an attorney several months before trial. *See Home Sav. of America FSB v. Harris Co. Water Control and Imp. Dist. No. 70,* 928 S.W.2d 217, 219 (Tex.App.—Houston [14th Dist.] 1996, no writ) (failure of corporate appellant to file answer through attorney does not prevent corporation's response from precluding a default); *R.T.A. Intern., Inc. v. Cano,* 915 S.W.2d 149, 151 (Tex.App.—Corpus Christi 1996, writ denied); *Handy Andy, Inc. v. Ruiz,* 900 S.W.2d 739, 741 (Tex.App.—Corpus Christi 1994, writ denied). In addition, the supreme court recently overruled the Houston court of appeals and held that it is inappropriate to dismiss an

appeal that was perfected by a corporate officer on behalf of the corporation. *Kunstoplast of America, Inc. v. Formosa Plastics Corp., USA,* 937 S.W.2d 455, 456 (Tex.1996) (overruling *Chauhan v. Formosa Plastics Corp., USA,* 928 S.W.2d 582 (Tex.App.—Houston [14th Dist.] 1996)). In *Kunstoplast,* the supreme court stated that the general rule that a corporation must be represented by a licensed attorney is not meant to preclude a corporation's right to appeal on a purely procedural ground. *Id.* A nonlawyer, the court stated, may perform ministerial tasks. *Id.*

Nor can we understand how Judge Spears felt authorized to find that the corporation's pleadings had been stricken when the record is devoid of an order ordering them stricken.

Finally, we believe striking the corporation's pleadings because its franchise taxes were unpaid, especially when the corporation offered to pay the taxes in order to maintain its defense, was an abuse of discretion. *See Bryan v. Cleveland Sand & Gravel Co.,* 139 S.W.2d 612, 613 (Tex.Civ.App.—Beaumont 1940, writ ref'd) (failure to pay corporation taxes doesn't preclude corporation from putting on purely defensive claims); *see also Hardwick v. Austin Gallery of Oriental Rugs, Inc.,* 779 S.W.2d 438, 441 (Tex. App.—Austin 1989, writ denied) (dismissal should not be granted until plaintiff has been given opportunity to cure defect).

However, despite the grievous error committed in granting the default, the corporation *voluntari-*

S.W.2d 260, 260 (Tex.1984) (suggesting that individual shareholders do not have standing to appeal on behalf of their corporations); *see also Thomas v. Thomas*, 917 S.W.2d 425, 431 n. 3 (Tex.App.—Waco 1996, no writ). The Menettis are only injured when the corporation's veil is pierced, and that is the only issue about which the Menettis have standing to complain.

### Right to Defend Liability Issues

The same reasoning supports our holding that, once the default judgment was entered against the corporation, liability was established, and the Menettis had no right to present a defense on the existence of liability for the underlying claim.

A strongly analogous case is *Karl & Kelly Co., Inc. v. McLerran*, 646 S.W.2d 174 (Tex. 1983). In that case, the plaintiffs sued both the corporation and its officers as individuals. *Karl & Kelly*, 646 S.W.2d at 174. However, the plaintiffs' petition raised no claims that the corporate veil should be pierced. *Id.* at 175. The trial court ordered a default judgment against all defendants after the defendants failed to appear at trial. *Id.* at 174. The individual officers complained that they could not be held liable for corporate acts in the absence of a veil-piercing allegation and proof of that allegation. *Id.* at 175. The supreme court agreed. The contract that was the subject of the suit had been entered into between the plaintiffs *and the corporation. Id.* Unless the court pierced the corporate veil, the individual officers could not be held liable for corporate acts. *Id; see also United Salt Corp. v. McKee*, 96 N.M. 65, 628 P.2d 310, 313 (1981) (corporate defendant was not prejudiced by finding of liability against employees as long as corporate defendant was allowed to contest negligent entrustment, respondeat superior, and damages).

*Karl & Kelly* is highly instructive. Because individual liability is impossible without some piercing of the corporate veil, the Menettis were not injured by the default judgment against the corporation. In fact, under the reasoning in *Karl & Kelly*, ab-

sent a piercing of the veil, the Menettis did not commit the complained-of acts: "[S]ince the contract was with the corporation and not with [the individual defendants], any representations made by [the individual defendants] were made as agents of the corporation.... [T]here is no evidence in the record before us that Karl and Kelly Company was the alter ego of either [individual defendant]. The courts below erred in rendering a personal judgment against them on this theory." *Karl & Kelly*, 646 S.W.2d at 175; *see also Crum & Forster, Inc. v. Monsanto Co.*, 887 S.W.2d 103, 151 (Tex.App.—Texarkana 1994) (holding that it does not violate due process to impose punitive damages on parent corporation when that corporation did not, itself, engage in wrongdoing, because corporate veil had been pierced, and liability thus was found for all entities in suit), *vacated pursuant to settlement agreement*, 1995 WL 273592 (Tex. App.—Texarkana March 9, 1995); *Jeff Robinson Bldg. Co. v. Scott Floors, Inc.*, 630 S.W.2d 779, 782 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.) (where petition alleged bad acts on part of "defendant" without indicating which defendant it was referring to and where corporation was sued on sworn account and individuals were brought in for purposes of piercing corporate veil, the individuals were not sued on sworn account but on alter ego theory of liability).

The Menettis' lack of standing disposes of all claims that the trial court erred in finding liability for fraud, DTPA violations, breach of contract, and negligence. We further find that the Menettis were not entitled to present a defense as to the existence of liability for the underlying claims. The remaining issues are whether the Menettis had a right, as individuals, to challenge the alter ego and similar claims; whether the Menettis' right to defend was violated; whether there was sufficient evidence upon which to pierce the corporate veil, under any theory, and hold the Menettis individually liable for the acts of the corporation; whether impermissible hearsay was allowed during trial; and wheth-

*ly dismissed its right to appeal. We cannot, in hindsight, correct an error that is not properly

before us, no matter how grievous that error may be.

er the Menettis were denied their due process right to a fair trial. We need only address the sufficiency of the evidence supporting the determination to pierce the corporate veil. *See* TEX.R.APP. P. 47.1 (appellate court must address all issues necessary to final disposition of appeal).

### PIERCING THE CORPORATE VEIL

The Menettis allege that they were not given the opportunity to defend the piercing-the-corporate-veil allegations. Undoubtedly, the Menettis were entitled to defend this claim, as it was the sole basis for finding them liable for the liability of the corporation. Whether they were denied this right is unclear from the record.[7] However, because we find that the Chaverses failed to introduce legally sufficient evidence to support their piercing the corporate veil, we do not reach the issue of whether the Menettis were deprived of the opportunity to present a viable defense. Instead, we turn to the sufficiency point of error.

### Was a Showing of Actual Fraud Necessary?

■ Texas case law and the Texas Business Corporation Act (TBCA) provide several theories under which the corporate veil may be pierced so that individual shareholders may be held liable for corporate acts. Those theories include: (1) where the corporate fiction is used to perpetrate fraud; (2) where a corporation is organized and operated as a mere tool or business conduit of another corporation (alter ego); (3) where the corporate fiction is resorted to as a means of evading an existing legal obligation; (4) where the corporate fiction is employed to achieve or perpetuate monopoly; (5) where the corporate fiction is used to circumvent a statute; (6) where the corporate fiction is

relied upon as a protection of crime or to justify wrong; and (7) where the corporation is inadequately capitalized. *Castleberry v. Branscum,* 721 S.W.2d 270, 272 (Tex.1986); *see also* TEX. BUS. CORP. ACT ANN. art. 2.21 (Vernon Supp.1998).

■ In 1993, the TBCA was revised to state that no contractual liability could be found under alter ego or "similar" theories unless there was also a finding that the individual to be charged used the corporation to perpetuate and did perpetuate actual fraud on the obligee of the contract, primarily for the personal benefit of the individual. *See* TEX. BUS. CORP. ACT. ANN. art. 2.21(A)(2) (Vernon Supp.1998). Prior to these amendments, commentators and courts agreed that all claims that were not contractual were governed by *Castleberry,* which required only a showing of constructive fraud in order to pierce the corporate veil. *See* James Gerard Gaspard, II, *A Texas Guide to Piercing and Preserving the Corporate Veil,* 31 BULL. BUS. L. SEC. ST. B. TEX. 24, 34 (Sept.1994) (1993 amendments in no way limited alter ego tort claims); *see also Stewart & Stevenson Serv., Inc. v. Serv–Tech, Inc.,* 879 S.W.2d 89, 107 (Tex.App.—Houston [14th Dist.] 1994, writ denied) (considering alter ego claim under *Castleberry,* without requiring showing of actual fraud, where parties had not entered into contract, and claim was in tort). Traditionally, Texas cases have attempted to treat contract claims and tort claims differently in determining whether to pierce the corporate veil. *See Lucas v. Texas Indus., Inc.,* 696 S.W.2d 372, 375 (Tex. 1984) (pointing out differences between tort and contract alter ego cases). The 1989 amendments to article 2.21 apparently tried to keep this distinction alive.

One commentator has suggested that this distinction has existed because, in contract

7. The record reflects a great deal of confusion as to whether the Menettis would be allowed to defend on the theories to pierce the corporate veil. Although many contradictory statements were made by the judge and the Chaverses' attorney on the issue, the last word from the Chaverses was, "They [the Menettis] should only be allowed to assert the fact that they say there is no corporate veil piercing, alter ego, sham to perpetrate a fraud, and trust fund doctrine." The Menettis made no attempt to present evidence on

the issue and made no objections during the presentation of their defense on damages. However, they objected at earlier points to suggestions by opposing counsel and by the trial judge that they would not be allowed to raise a defense on veil-piercing claims. Further, the record suggests that, by the time the Menettis were given an opportunity to put on any defense at all, the issue had become so confused that the Menettis may have believed the matter to have been definitively resolved against them at an earlier point.

cases, the parties have voluntarily come together to conduct business, but in tort cases there is no such voluntariness: "The theory of the statute is that the Texas Business Corporations Act should be more stringent in contract cases than in tort cases because in contract cases the plaintiff had the opportunity to select the entity with which he deals as opposed to tort cases in which no such choice exists." Gaspard, *A Texas Guide to Piercing and Preserving the Corporate Veil*, at 34.

Under 1997 amendments, article 2.21(A)(2) appears to blur the distinction between contractual obligations and other claims. The provision now states that it covers all contractual obligations of the corporation *"or any matter relating to or arising from the obligation."* TEX. BUS. CORP. ACT ANN. art. 2.21(A)(2) (Vernon Supp.1998) (amended by Act of May 1, 1997, ch. 375, § 7, 1997 Tex. Sess. Law Serv. 1522–3) (emphasis added). The amendment took effect on September 1, 1997, and applies to all corporations, regardless of the date of their incorporation. Act of May 1, 1997, ch. 375, § 125, 1997 Tex. Sess. Law Serv. 1610. For all matters covered by this provision, the corporate veil may not be pierced absent a showing of actual fraud. The commentary following the 1996 amendments suggests that the actual fraud requirement should be applied, by analogy, to tort claims, especially those arising from contractual obligations. *See* TEX. BUS. CORP. ACT. ANN. art. 2.21 comment (Vernon Supp.1998).

■ In the case before the court, both contract and tort claims have been brought against the Menettis. Whether a showing of actual fraud is required to pierce the corporate veil in this case is, we believe, a question of some difficulty. However, after surveying the case law and the legislation, which seem to be somewhat at odds on the entire issue of corporate-veil piercing, we conclude that the claims before us do relate to or arise from a contractual obligation and therefore fall under the amended article 2.21. Thus, the Chaverses were required to demonstrate actual fraud to pierce the corporate veil and hold the Menettis individually liable. We are persuaded that this is the correct course because we believe the traditional concerns

of tort cases, that the parties have not encountered each other voluntarily, do not apply here, where the Menettis and the Chaverses did in fact enter a bargain knowingly. *See* Gaspard, *A Texas Guide to Piercing & Preserving the Corporate Veil,* at 34.

The Menettis raise several claims regarding the issue of piercing the corporate veil. Because we believe there was legally insufficient evidence to support the finding of actual fraud, we need reach only that issue. *See Stewart,* 879 S.W.2d at 107 (where there is insufficient evidence of alter ego, rendition of judgment is required). A finding that no actual fraud was committed destroys not only the attempt to pierce the corporate veil by a showing of an alter ego, but by "other similar theor[ies]." TEX. BUS. CORP. ACT. ANN. art. 2.21(A)(2) (Vernon Supp.1998). Thus, our conclusion that there is insufficient evidence to find actual fraud precludes holding the Menettis individually liable for the acts of their corporation.

### Actual Fraud: Sufficiency of the Evidence

■ Actual fraud in the corporate-veil context involves "dishonesty of purpose or intent to deceive." *Castleberry,* 721 S.W.2d at 273. The Menettis note that the instructions given to the jury narrow that definition to fraud by material representation. According to the Menettis, there was no or insufficient evidence to prove fraud through misrepresentation and, by virtue of the instruction, the Chaverses were precluded from proving it in any other way. *See Thrift v. Hubbard,* 44 F.3d 348, 354 (5th Cir.1995) (where question defined fraud in terms of material misrepresentations, appellant could not ask court to find it had proved fraud in other ways). We agree.

The Chaverses claim that the Menettis' sufficiency objection was not specific enough to preserve error. However, the Menettis did raise sufficiency-of-the-evidence points on fraud in their motion for an instructed verdict and their motion for new trial. Error is sufficiently preserved.

■ In considering a "no evidence," or legal sufficiency point, we consider only the

evidence favorable to the decision of the trier of fact and disregard all evidence and inferences to the contrary. *Davis v. City of San Antonio,* 752 S.W.2d 518, 522 (Tex.1988). If there is any evidence of probative force to support the finding, the finding will be upheld. *Southern States Transp., Inc. v. State,* 774 S.W.2d 639, 640 (Tex.1989). We conduct this review in alter ego claims, even though the jury is instructed to consider all the evidence surrounding the corporate entity and its relationship with the plaintiff. *See Mancorp, Inc. v. Culpepper,* 802 S.W.2d 226, 232 n. 1 (Tex.1990) (Hecht, J., dissenting) (objecting to consideration of only the evidence favoring the verdict, when jury was required to consider all relevant factors).

The evidence favorable to the verdict is that Mr. Menetti made several representations to the Chaverses. These representations include: (1) that Mr. Menetti would work from agreed upon blueprints; (2) that Mr. Menetti would obtain all appropriate permits to complete the job; (3) that Mr. Menetti would hire qualified employees or sub-contractors; (4) that Mr. Menetti had a crew of workers to complete the project; (5) that Mr. Menetti would provide a patio cover at no extra charge; (6) that Mr. Menetti had the expertise to do the work; and (6) that Mr. Menetti would be there to supervise the work.

Actual fraud by misrepresentation consists of a representation that is (1) material; (2) false; (3) knowingly false or made with reckless disregard for its truth or falsity; (4) made with the intention that it be acted upon by the other party; (5) relied upon by the other party; (6) damaging to the other party. *Thrift,* 44 F.3d at 354; *Huff v. Harrell,* 941 S.W.2d 230, 237 (Tex.App.— Corpus Christi 1996, writ denied). The Chaverses have failed to show that any of the relevant representations were material or knowingly or recklessly false.

The Chaverses did establish reliance, but there is little, if any, proof that any *mis*representations were made to them. The parties agree that Mr. Menetti did work from blueprints. As for the obtaining of permits, the parties reached a standstill before the time at which this would have been appropriate. There is no evidence that Mr. Menetti did not hire contractors to do the work or that he did not have a crew. Although he did end up charging $400 for a patio cover that he said he would provide at no extra charge, there is no evidence that he knew at the time he would charge for the cover. There was no showing that Mr. Menetti did not have the expertise to do the work. Finally, Mr. Chavers's own testimony established that Menetti at least supervised the project to some degree.

There was also no evidence that Mr. Menetti knew that any of the allegedly false statements were false or that the Menettis personally benefitted from any misrepresentations. *See Thrift,* 44 F.3d at 354 (direct personal benefit shown where the funds that the corporation should have used to pay creditor were used by shareholders to pay office lease, which shareholder held in its own name). Evidence that the Menettis bought their groceries or paid their credit card bills from the corporate account is insufficient, because the fraud must relate to the transaction at issue, the contract between the Menettis and the Chavers. *Id.* Thus, Ms. Chavers' testimony about her generally inept handling of the corporate accounts is not relevant to this issue.

What the evidence abundantly shows is that the Menettis were careless bookkeepers and perhaps enjoyed the tax advantages of living off their corporate funds with little effort to preserve the corporate fiction. The record also provides ample evidence of shoddy workmanship. What the record does not show is that the Menettis committed actual fraud against the Chaverses that would justify piercing the corporate veil. Because article 2.21 requires a fraud finding to pierce the corporate veil by the methods outlined in the statute and by "other similar" theories, this finding eliminates individual liability for all the other theories pleaded by the Chaverses, as well.[8] *See Huff,* 941 S.W.2d at 237 (no

8. At any rate, we have serious reservations about the relevance and application of the Trust Fund

Doctrine in this case. In the first place, there is case law suggesting that the doctrine only applies

piercing corporate veil unless fraud is proved, where plaintiffs claimed alter ego, unfair device, and denuding a corporation).

## CONCLUSION

We find that the Menettis were not entitled to defend, as individuals, liability once it was deemed against the corporation. They were entitled to defend the alter ego claim. Although we have serious doubts as to whether they were permitted to do so, we are not required to reach that issue. We find that under the amended article 2.21 of the Texas Business Corporations Act, the Chaverses were required to prove that the Menettis were guilty of actual fraud in their transactions with the Chaverses in order to pierce the corporate veil. We find legally insufficient evidence of such fraud; therefore, we must reverse the judgment and render a decision that the Chaverses take nothing from the Menettis as individuals. The judgment against the corporation is not affected by this holding.

All other claims are unaddressed either because the Menettis lack standing to bring them or they are unnecessary to the disposition of this appeal.

Concurring opinion by DUNCAN, J.

DUNCAN, Justice, concurring.

I agree with and join that part of the majority opinion holding actual fraud is required to pierce the corporate veil and impose liability on the Menettis in these circumstances and, further, the record contains no evidence to support the jury's finding on this issue. I do not, however, join the dicta in the majority opinion regarding a corporation's shareholders' standing to challenge a judgment against the corporation.    at 172. Nor do I read *Shults v. State*, 682 S.W.2d 260 (Tex.1984), to support either the majority's explicit statement that a judgment against a

corporation does not injure or prejudice the corporation's shareholders or its implicit statement that corporate shareholders will never have standing to appeal such a judgment. Additionally, while the other case cited by the majority, *Thomas v. Thomas*, 917 S.W.2d 425 (Tex.App.—Waco 1996, no writ), holds that the sole shareholder of a defunct corporation did not have standing to raise the corporation's complaints regarding a turnover order, *id.* at 432, the corporation was not a party to the proceeding in the trial court or the trial court's order, *id.* at 431, and the court reached this conclusion without analysis or a single citation to authority.

In my view, it is beyond dispute that the shareholders of a corporation are always damaged by a judgment against the corporation at least to the extent the value of their stock is diminished, and this issue is much too complex and fact-specific to be addressed in a cursory or abstract manner, particularly in light of Texas' express authorization of shareholder derivative suits in certain situations. *See, e.g.,* TEX. BUS. CORP. ACT ANN. art. 5.14 (Vernon 1980); TEX.R. CIV. P. 42(a).

With these comments, I concur in the court's judgment and in its denial of the Menettis' motion to recall the mandate and to reinstate Menetti & Co., Inc.'s appeal.

---

when a corporation is dissolved. *See Kern v. Gleason,* 840 S.W.2d 730, 738 (Tex.App.—Amarillo 1992, no writ) (refusing to apply Trust Fund Doctrine where corporation was not dissolved). In the second place, the doctrine provides no basis for personal liability of corporate directors. *Siegel v. Holliday,* 663 S.W.2d 824, 827 (Tex. 1984). It merely allows corporate creditors to

follow *corporate assets· that are traceable* and to subject those assets to their claims. *Id.* In order to rely on this theory, then, the Chaveres needed to demonstrate the amount of corporate assets (probably of a dissolved corporation) received and held by the Menettis. No such showing was made.