**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**August 15, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 04-41038

_____

In the Matter of: AVANTE VILLA
OF CORPUS CHRISTI, INC.,

                                                    Debtor,

------------------

D MICHAEL BOUDLOCHE, Trustee, for
the Estate of Avante Villa of
Corpus Christi, Inc.,

                                                    Appellant,

        versus

A G HOLDINGS INC., formerly known
as Avante Group Inc.; GANOT CORP.;
RON OSTROFF; HARVEY LICHTMAN;
ALAN KRANZ,

                                                    Appellees.

_____

Appeal from the United States District Court
for the Southern District of Texas

_____

Before GARWOOD, GARZA and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

---

[*]Pursuant to 5TH CIR. R. 47.5 the Court has determined that this opinion
should not be published and is not precedent except under the limited
circumstances set forth in 5TH CIR. R. 47.5.4.

Bankruptcy trustee D. Michael Boudloche (Trustee) appeals the district court's affirmance of the bankruptcy court's decision not to hold the directors of debtor corporation Avante Villa (Debtor) personally liable under Texas law for transfers made to Debtor's parent company, Avante Group, Inc. (Avante Group).  We affirm.

## Facts and Proceedings Below

In January 1995 a $1.2 million default judgment in a wrongful death suit was entered against Debtor, a nursing home in Corpus Christi, Texas.[1]  A state district judge set aside the judgment in February 1995, but a state court of appeals reinstated it in June 1996.  In October 1997 the Texas Supreme Court denied Debtor's writ requesting review of the reinstatement of the judgment.

Debtor was wholly owned by Avante Group, and two of Debtor's directors were officers of Avante Group (one of these two was also a director of Avante Group).  Ever since a time well prior to 1995, Avante Group and Debtor operated under a management agreement that stipulated that Avante Group would handle Debtor's cash, purchasing, personnel and policies in return for a management fee. In keeping with this agreement, Avante Group and Debtor used a "cash management system" in which all payments to Debtor (along with those to Avante Group's other subsidiaries) were deposited into a central account controlled by Avante Group, with Avante

---

[1]Debtor explained that the lawsuit was not responded to because Debtor's president left the company and Debtor's founder died during the period of time immediately after the suit was filed.

Group keeping track of each subsidiary's balance. Avante Group made necessary payments on behalf of Debtor from this account even if Debtor did not have a positive balance, so that cash from solvent subsidiaries was effectively loaned to subsidiaries that were temporarily without liquid assets in order to keep all of the subsidiaries operating.

At the time the default judgment was reinstated in June 1996, Debtor was insolvent and maintained its operations only by virtue of these loans from Avante Group via the cash management system. In June 1996, Debtor owed over $2 million to Avante Group. Avante Group had been looking since early 1996 for another company to lease Debtor's nursing home facility and take over its operation. An agreement to terminate Debtor's lease was executed in July 1996, and Debtor's operation of the nursing home ceased September 1, 1996. Avante Group received approximately $1.6 million in income attributable to Debtor after June 1996, some $950,000 of which was payments to the cash management account from government and private insurers and $450,000 of which was a lease termination payment sent by the lessor directly to Avante Group. Avante Group used about $1.2 million of this income to pay debts to trade creditors of Debtor. Debtor filed for Chapter 7 bankruptcy in November 1997. At that time, all of its trade creditors had been paid in full, the

judgment creditor had been paid nothing, and Debtor's debt to Avante Group had increased to approximately $4.1 million.[2]

Trustee initiated an adversary proceeding in bankruptcy court against Avante Group, alleging that the transfers of Debtor's income to Avante Group after June 1996 were fraudulent, preferential, and in violation of Texas Business Corporations Act (TBCA) article 2.41.  Essentially, Trustee argued that Debtor's delay in filing bankruptcy until trade creditors had been fully paid and Avante Group's claim had further increased was a fraudulent attempt to disadvantage the judgment creditors.  Remedies requested included piercing of the corporate veil to make Avante Group liable for the default judgment, subordination of Avante Group's claim to that of the judgment creditors, and individual liability of the Debtor's directors under TBCA article 2.41 for the $1.6 million in transfers after June 1996.

The bankruptcy court held that Trustee had not proven that Debtor, Avante Group, or their officers and directors had intent to hinder, delay or defraud the judgment creditors through the cash management system transfers.  Without this actual intent, the period of up to four years available for avoiding fraudulent transfers under Texas law cannot be applied.  *See* TEX. BUS. & COM.

---

[2]The judgment creditors had not attempted to execute the judgment after its reinstatement in June 1996.  The creditors' attorney testified that Debtor's attorney indicated that there was insurance and that there were sufficient assets to pay the judgment if the appeal to the Texas Supreme Court failed.  Debtor's attorney denied saying this, however.  No findings were made in that respect by the courts below.  Debtor's insurance did not provide coverage for default judgments.

CODE §§ 24.005(a)(1), 24.010(a)(1). The court also held that there was not misconduct to merit equitable subordination of Avante Group's claim to that of the judgment creditors, and that Trustee did not meet his burden of proof in showing that Debtor's directors should be personally liable for any transfers. The court did avoid $723,796.27 of payments to Avante Group made during the year prior to filing bankruptcy as preferential payments under 11 U.S.C. § 547.[3]

Upon appeal, the district court largely affirmed the bankruptcy court's judgment, but modified it by awarding $217,260.20 in "new value credit" to Avante Group for its payments to Debtor's creditors in that amount.[4] Trustee moved for rehearing on the single issue of whether Debtor's directors should be held

---

[3]11 U.S.C. § 547 provides in pertinent part:
". . . .
**(b)** Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property–
    **(1)** to or for the benefit of a creditor;
    **(2)** for or on account of an antecedent debt owed by the debtor before such transfer was made;
    **(3)** made while the debtor was insolvent;
    **(4)** made–
        **(A)** on or within 90 days before the date of the filing of the petition; or
        **(B)** between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
    **(5)** that enables such creditor to receive more than such creditor would receive if–
        **(A)** the case were a case under chapter 7 of this title;
        **(B)** the transfer had not been made; and
        **(c)** such creditor received payment of such debt to the extent provided by the provisions of this title.
. . . ."

[4]Trustee does not appeal this new value determination, and in fact conceded the issue before the district court.

5

personally liable for unlawful distributions to Avante Group under TBCA article 241.  Upon the district court's denial of the motion, Trustee appeals that sole issue to this court.

## Discussion

### I.  *Standard of Review*

We review bankruptcy court rulings using the same standard of review applied by the district court in its review of the bankruptcy court: findings of fact are reviewed for clear error, and issues of law reviewed *de novo*.  *In re CPDC, Inc.*, 337 F.3d 436, 440–41 (5th Cir. 2003).

### II.  *Liability of Directors Under TBCA Article 2.41*

Texas law holds a corporation's directors who "vote for or assent to a distribution by the corporation" personally liable to the corporation for the amount of the distribution made if the corporation would be insolvent after giving effect to the distribution.[5]  TBCA arts. 2.38, 2.41.  The statute of limitations

---

[5]TBCA art. 2.41 provides in pertinent part:
"A.  In addition to any other liabilities imposed by law upon directors of a corporation:
(1) Directors of a corporation who vote for or assent to a distribution by the corporation that is not permitted by Article 2.38 of this Act shall be jointly and severally liable to the corporation for the amount by which the distributed amount exceeds the amount permitted by Article 2.38 of this Act to be distributed; provided that a director shall have no liability for the excess amount, or any part of that excess, if on any date after the date of the vote or assent authorizing the distribution, a distribution of that excess or that part would have been permitted by Article 2.38.
. . .
(3) An action may not be brought against a director for liability imposed by this section after two years after the date on which the act alleged to give rise to the liability occurred.
B.  A director of a corporation who is present at a meeting of its board of directors at which action on any corporate matter is taken

6

for article 2.41 actions is two years.  TBCA art. 2.41(A)(3).
Trustee argues that Debtor's directors should be held personally
liable for transfers made to Avante Group after the state appeals
court reinstated the default judgment in June 1996.  The parties do
not dispute that Debtor was insolvent at that time.  Applicability
of article 2.41 therefore depends on whether the transfers from
Debtor to Avante Group were "distributions" within the meaning of

<hr />

shall be presumed to have assented to the action taken unless his
dissent shall be entered in the minutes of the meeting or unless he
shall file his written dissent to such action with the person acting as
the secretary of the meeting before the adjournment thereof or shall
forward such dissent by registered mail to the secretary of the
corporation immediately after the adjournment of the meeting.  Such
right to dissent shall not apply to a director who voted in favor of
such action.
. . .
        E.   A director against whom a claim shall be asserted under this
Article for a distribution made by the corporation, and who shall be
held liable thereon, shall be entitled to contribution from the
shareholders who accepted or received such distribution knowing that
such distribution was not permitted by Article 2.38, in proportion to
the amounts received by them, respectively.
        F.   A director found liable with respect to a claim shall be
entitled to contribution as appropriate to achieve equity from each of
the other directors who are liable with respect to that claim.
        G.   The liability provided in Subsection (1) of Section A of this
Article shall be the only liability of directors to a corporation or its
creditors for authorizing a distribution by the corporation that is not
permitted by Article 2.38 of this Act.  The liability provided in
Section E of this Article shall be the only liability of shareholders to
a corporation or its creditors for accepting or receiving a distribution
by the corporation that is not permitted by Article 2.38 of this Act;
provided, however, that this Section does not limit any liability under
the Uniform Fraudulent Transfer Act or the United States Bankruptcy
Code."

TBCA art. 2.38 provides in pertinent part:
  ". . .
        B.   A distribution may not be made by a corporation if:
        (1) after giving effect to the distribution, the corporation would
  be insolvent; or
        (2) the distribution exceeds the surplus of the corporation.
  . . .
        D.   Notwithstanding the limitations set forth in Section B of this
  Article, the corporation may make distributions in compliance with
  Article 6.04, 7.09, or 7.12 of this Act."

articles 2.41 and 2.38, and, if so, whether Debtor's directors "vote[d] for or assent[ed] to" these distributions as required by article 2.41. The bankruptcy court did not address these questions specifically, concluding simply that Trustee failed to sufficiently prove his claim of director liability. The district court held that the transfers were distributions within the meaning of the TBCA, but that Trustee did not prove that Debtor's directors assented to the transfers.

The TBCA defines "distribution" as a transfer of money or other property by a corporation to its shareholders, where the transfer can be in the form of a dividend, a share repurchase, or "a payment by the corporation in liquidation of all or a portion of its assets." TBCA art. 1.02(13).[6] The bankruptcy court found that Debtor's payments to Avante Group between July 1996 and November 1997 were liquidation proceeds, and this finding is not clearly erroneous. Since Avante Group is Debtor's sole shareholder, the payments from Debtor to Avante Group arguably may qualify as distributions under TBCA article 1.02(13)(c). It is not clear that the payments to Avante Group are really payments to "shareholders"

---

[6]TBCA art. 1.02(13) provides:
"(13) 'Distribution' means a transfer of money or other property (except its own shares or rights to acquire its own shares), or issuance of indebtedness, by a corporation to its shareholders in the form of:
(a) a dividend on any class or series of the corporation's outstanding shares;
(b) a purchase, redemption, or other acquisition by the corporation, directly or indirectly, of any of its own shares; or
(c) a payment by the corporation in liquidation of all or a portion of its assets."

within the meaning of the TBCA "distribution" definition, however. Previous application of article 2.41 has not involved payments that reduce the indebtedness of the corporation, as here.[7]  Director liability under article 2.41 is liability to the corporation, and because all payments reduced the corporation's debt, the corporation does not appear to have been harmed.

Even if the payments from Debtor to Avante Group are deemed to be distributions, however, Trustee did not sufficiently prove that Debtor's directors assented to enough payments to justify the $1.6 million liability demanded.  In the case of one of the directors, Alan Kranz, there was no specific evidence of assent presented. With regard to the other directors, Harvey Lichtman (Lichtman) and Ron Ostroff (Ostroff), there was evidence that Lichtman and Ostroff had been involved in determining the amount of the $450,000 lease termination payment that was sent to Avante Group in July 1997. Lichtman further testified that the directors had met on multiple occasions to discuss what generally to do with the assets of the corporation, though he could not recall whether these meetings were

---

[7]The only case cited by the parties involving article 2.41 is one in which a corporation repurchased the shares of one of its directors when the corporation had become insolvent.  *In re Gribbin Supply Co., Inc.*, 371 F. Supp. 664, 667–68 (N.D. Tex. 1974).  This is consistent with interpretation of articles 2.41 and 2.38 as contemplating distributions to shareholders *as shareholders*, rather than to a shareholder as a manager (in the case of the payments used to pay the trade creditors) or as a creditor (in the case of the payments used to reduce Debtor's debt to Avante Group).  Trustee does not appeal the district court's affirmance of the bankruptcy court's ruling that Avante Group's contributions to Debtor created debt rather than equity.

formal or informal.[8]   There is no evidence that any of these discussions touched on the cash management system or payments to Avante Group.

Lichtman and Ostroff arguably may have assented to the payment by the lessor of the lease termination fee to Avante Group rather than to Debtor. *See In re Gribbin Supply Co., Inc.*, 371 F. Supp. 664, 667–68 (N.D. Tex. 1974).   This transfer totals less than $500,000, however, and the bankruptcy court's judgment as modified by the district court requires Avante Group to return more than this amount to Debtor as preferential payments.   There is no evidence that article 2.41 is intended to be a punitive provision; rather, it is intended to return to the corporation funds that directors have improperly caused to be distributed to shareholders.[9]   Because these funds have already been returned to the corporation, there is no reason to hold the directors liable

---

[8]The testimony does not specify whether Lichtman was referring to the board of directors of Debtor or that of Avante Group (Lichtman was a director of both corporations).   The district court interpreted the testimony as referring to Debtor's board of directors.

Trustee argues on appeal that further evidence of assent to transfers comes from checks to Avante Group allegedly signed by Debtor's directors.   Although copies of several checks transferring funds to Avante Group were admitted into evidence during the bankruptcy court trial, they were apparently introduced for the purpose of illustrating delays in making accounting entries and failures to disclose transfers to Trustee, rather than to support allegations of assent to transfers.   There is no testimony or argument before the bankruptcy court regarding who signed any of the checks (many of the purported signatures on which are virtually illegible) or what amount in transfers was allegedly assented to by any of the directors in this manner.   We conclude that this argument is not sufficiently supported in the record.

[9]The non-punitive nature of the director's liability is illustrated by the director's right of contribution from any shareholders who received distributions knowing that they were not permitted by TBCA article 2.38.   TBCA art. 2.41E.

10

for them.  *Cf*. 20A, ROBERT W. HAMILTON ET AL, TEXAS PRACTICE SERIES, § 37.20 at 210-11 & n.8 ("Presumably, the common law [trust fund] liability of directors is limited to amounts that are distributed preferentially and not recoverable by the bankruptcy trustee").

With regard to the transfers by others to Avante Group through the cash management system, Trustee did not present sufficient evidence establishing that these were assented to by the directors. Such evidence might have included some evidence of agreement by the directors to continue use of the cash management system even after Debtor was to cease doing business, for example.  Although article 2.41 provides that a director present at a meeting where action is taken is presumed to have assented to the action unless he files a written dissent, the statute does not suggest that assent to continuation of previously established practice is established merely from later inaction with knowledge of the practice. Therefore, even if meetings of the directors generally discussing what to do with the corporation's assets (without any evidence that the cash mangement system was discussed) might suggest awareness that transfers were being made by others through the cash management system properly established years previously, they do not establish assent within the meaning of article 2.41.  Since the general rule is that directors of a corporation are not personally liable for the corporation's obligations, we do not believe that "assent" under article 2.41 was intended to be interpreted

11

expansively, particularly when the directors have achieved no financial gain and fraud is not at issue.

At oral argument, Trustee appeared to assert that Debtor was barred by the Texas common law "trust fund doctrine" from preferring one creditor over another once a decision had been made to liquidate the company. The trust fund doctrine does not support recovery here, however.[10] Even if the trust fund doctrine could be applied here, the potential liability is presumed by commentators to be limited to the amount that the creditor would have received in an equitable distribution among all creditors. 20A ROBERT W. HAMILTON ET AL., TEXAS PRACTICE SERIES § 37.20 at 210-22 & n.8 (2d ed. 2004). In no event is a director liable under the trust fund doctrine when the total of payments to all creditors exceeds the amount of corporate assets received. *Id.;* Halliday, 663 S.W.2d at 828; *N. Am. Sav. Ass'n v. Metroplex Dev. P'ship*, 931 F.2d 1073, 1079-80 (5th Cir. 1991). All of the payments received by Avante Group went to paying debts of creditors. There is therefore no

---

[10]The trust fund doctrine was invoked by a creditor of a dissolved corporation, not by the corporation itself. *Henry I. Seigel Co., Inc. v. Halliday*, 663 S.W.2d 824, 827 (Tex. 1984). Furthermore, the doctrine did not generally provide for personal liability of the corporation's directors. Rather, it allowed the creditor to trace assets of the corporation and subject those assets to its claim (unless the assets were in the hands of a bona fide purchaser). A director was personally liable under the trust fund doctrine only if he had caused assets to be untraceable or diminished their value. *Id.* Finally, the trust fund doctrine is believed to have been superceded by the provision of TBCA art. 2.41G, added in 1991, that liability under article 2.41 is the only liability of a director to the corporation or its creditors for an improper distribution. *See Smith v. Chapman*, 897 S.W.2d 399, 402 (Tex. App.—Eastland 1995); 20A ROBERT W. HAMILTON, ET AL., TEXAS PRACTICE SERIES § 45.13 & n.16 (2d ed. 2004).

basis under the trust fund doctrine for the $1.6 million judgment against the directors demanded by Trustee.

## Conclusion

For the foregoing reasons, the judgment of the district court is

AFFIRMED.