TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-02-00334-CV







Ezell Green and Ida Mae Green, Appellants


v.


Gemini Exploration Company and Robert Edsel, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT

NO. 96-12740, HONORABLE F. SCOTT McCOWN, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N




 This dispute concerns an oil and gas lease between appellants Ezell and Ida Mae
Green and appellees Gemini Exploration Company and Robert M. Edsel, the president and owner
of Gemini. After the lease expired, the Greens brought suit against Gemini, the leaseholder, and
Edsel for not drilling a well or pooling their property. The Greens alleged fraud, discrimination, and
breach of various implied covenants. Pursuant to motions for partial summary judgment filed by
appellees, all except one of the Greens' claims were dismissed. A take-nothing jury verdict was
rendered against the Greens on the sole remaining claim. In ten issues, the Greens appeal the adverse
judgment of the district court. We will affirm in all respects. 


BACKGROUND


 The Greens own a sixty-acre tract of land in Lee County, in the Giddings (Austin
Chalk 3) Field. In the early 1990s, Gemini approached the Greens to offer terms for an oil and gas
lease. The Greens rejected Gemini's initial offer, and further negotiations failed. However, Gemini
successfully leased nearby tracts of land, created two units, and commenced drilling two wells: the
Keng and Islet units. Production from the Keng well did not cover the costs of completion, drilling,
and operation. The Islet well performed better but did not produce a profit. The Greens eventually
approached Gemini through its agent, Mike Gaffney, about leasing their property. Gemini initially
declined, but sometime in 1992 Gemini reconsidered and signed a three-year lease with the Greens
on October 30, 1992. (1) This lease was a standard three-year, primary-term lease that was "paid up,"
thus providing for an upfront payment to the Greens of $6000. Gemini never drilled a well on the
Greens' property and never pooled it with any other acreage. Gemini unsuccessfully attempted to
persuade Union Pacific Resources Company ("UPRC") to include the Greens' lease in a unit UPRC
formed nearby. The lease expired at the end of October 1995.

 The Greens filed suit in Travis County on October 21, 1996, against Gemini and
Edsel for breach of the duties to protect the lease from drainage, to reasonably develop the lease, to
administer and manage the lease, and to seek favorable administrative action, for fraud, and for
illegal discrimination. Edsel filed a motion for partial summary judgment in July 1997 ("Edsel's
motion"), seeking dismissal from the case. The Greens responded to his motion and at the same time
moved for an extension of time to supplement their response on the basis that they were unable to
depose Edsel because he was out of the country. The district court granted Edsel's motion without
discussion, stating only that "there is no genuine issue as to a material fact regarding Edsel's personal
liability."

 In September 1999, Gemini filed a motion for partial summary judgment on both
traditional and no-evidence grounds ("second motion for partial summary judgment"), to which the
Greens responded. In its order, the court outlined the procedural history of the case and without
discussion granted summary judgment on four issues: claims of fraud, illegal discrimination, breach
of implied covenant to reasonably develop the lease, and breach of duty of good faith and fair
dealing. The court refused to dismiss the Greens' claims of breach of implied covenant to protect
from drainage and breach of implied covenant to reasonably administer the lease. In January 2001,
Gemini filed another motion for partial summary judgment ("third motion for partial summary
judgment") to dismiss the Greens' two remaining causes of action. The Greens filed a cross motion
for partial summary judgment and argued that the district court was precluded from reconsidering
whether to dismiss the Greens' remaining causes of action because it had not dismissed them in the
second partial summary judgment order. The Greens later filed a response to Gemini's motion and,
in support of their cross motion, submitted the expert opinion affidavit of James Smith, a petroleum
engineer and former field operations director for the Texas Railroad Commission. After hearing
arguments, the court dismissed the Greens' claim of breach of implied covenant to reasonably
administer the lease. It also denied all of the Greens' motions.

 On January 28, 2002, trial commenced on the Greens' claim against Gemini for its
alleged breach of implied covenant to protect from drainage. At trial, the Greens offered Smith's
expert testimony. The district court allowed Smith to testify as to whether there was substantial
drainage from the Greens' land, whether a protection well could have been drilled on the Greens'
property, and whether Gemini would have had a reasonable expectation of profit had it done so. 
However, the court did not allow Smith to testify as to whether Gemini should have released the
Greens' lease, about any possible compensatory royalties or about any possibility of pooling the
Greens' lease with either the Keng or Islet units. The Greens also offered the testimony of Don
Williams, an oil and gas operator, who had considered leasing the Greens' land. The district court
limited Williams's testimony to his decision not to lease the property and would not permit him to
testify about the issue of drainage because the Greens had not certified him as an expert during
discovery.

 In its defense, Gemini offered the testimony of three expert witnesses: Edsel, who
testified as to oil and gas production in the Giddings (Austin Chalk 3) Field; Duane Wagner, a
petroleum geologist who testified to drainage in the Giddings (Austin Chalk 3) Field upon review
of "mud logs" (2) of the Keng and Iselt units; and Don Carver, an oil and gas operator in the Giddings
(Austin Chalk 3) Field and a petroleum engineer, who testified about the mechanics of drilling
horizontal wells like those in the Keng and Islet units and about drainage resulting from those wells. 
The district court denied the Greens' motions to exclude Gemini's witnesses and denied their
requests to conduct a voir dire of those witnesses. 

 The district court submitted the factual questions to the jury on February 1, and the
jury rendered a verdict in favor of Gemini. The Greens filed a motion for a new trial based on
allegations of jury misconduct due to outside influence on the jury deliberations. Their motion was
overruled by operation of law. This appeal followed.


DISCUSSION


 On appeal, the Greens' first four issues challenge the district court's partial summary
judgments. In their fifth, sixth, and seventh issues, the Greens challenge evidentiary rulings by the
district court concerning both their expert witnesses and those offered by Gemini. In their eighth and
ninth issues, the Greens make various complaints about the jury charge. In their tenth issue, the
Greens argue that the district court should have reversed the jury verdict because of improper outside
influences brought into the jury room. We will first address the summary judgment issues and will
then discuss the trial issues.


Standards for Reviewing Summary Judgments

 The standards for reviewing traditional summary judgments are well established: (1)
the movant for summary judgment has the burden of showing that no genuine issue of material fact
exists and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed
material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken
as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any
doubts resolved in its favor. Tex. R. Civ. P. 166 (a)(c); Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d
546, 548-49 (Tex. 1985). The function of summary judgment is not to deprive litigants of the right
to trial by jury, but to eliminate patently unmeritorious claims and defenses. Swilley v. Hughes, 488
S.W.2d 64, 68 (Tex. 1972). The summary judgment is affirmable on appeal if any ground asserted
in the motion for summary judgment is a valid ground for rendering summary judgment. Cincinnati
Life Ins. Co. v. Cates, 927 S.W.2d 623, 626 (Tex. 1996). Thus, a party moving for summary
judgment must conclusively prove all elements of its cause of action or defense as a matter of law. 
Tex. R. Civ. P. 166(a)(c); Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 233 (Tex. 1999); Walker
v. Harris, 924 S.W.2d 375, 377 (Tex. 1996). 

 A no-evidence summary judgment is properly granted if the nonmovant fails to bring
forth more than a scintilla of probative evidence to raise a genuine issue of material fact as to an
essential element of the nonmovant's claim on which the nonmovant would have the burden of proof
at trial. See Tex. R. Civ. P. 166a(i); Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711
(Tex. 1997). Thus, "a no-evidence summary judgment is essentially a pretrial directed verdict, and
we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as
we apply in reviewing a directed verdict." Jackson v. Fiesta Mart, 979 S.W.2d 68, 70 (Tex.
App.--Austin 1998, no pet.) (citing Moore v. K Mart Corp., 981 S.W.2d 266, 269 (Tex. App.--San
Antonio 1998, pet. denied)). The task of the appellate court is to determine whether the plaintiff has
produced any evidence of probative force to raise fact issues on the material questions presented. 
The appellate court must consider all of the evidence in the light most favorable to the party against
whom the no-evidence summary judgment was rendered, every reasonable inference must be
indulged in favor of the nonmovant, and any doubts resolved in its favor. Qantel Bus. Sys., Inc. v.
Custom Controls Co., 761 S.W.2d 302, 303-04 (Tex. 1988). 


The Second Partial Summary Judgment

 We will begin with the Greens' third and fourth issues, whereby they urge us to
reverse the district court's grant of the second motion for partial summary judgment.

 In their third issue, the Greens contend that the district court erred in dismissing their
cause of action "based on the breach of the duty of good faith and fair dealing which was implied
from the lease agreement." Specifically, the Greens complain of Gemini's failure to pool their
property with other surrounding properties. The supreme court has expressly rejected the inclusion
of a general implied covenant of good faith and fair dealing in Texas contracts. English v. Fischer,
660 S.W.2d 521, 522 (Tex. 1983). Although such a duty may exist in a fiduciary relationship, the
court has not enumerated a duty of good faith and fair dealing when examining the duties implied
in oil and gas leases. See Amoco Prod. Co. v. Alexander, 622 S.W.2d 563, 567 (Tex. 1983). To the
contrary, Texas courts have specifically held that unless the lease document itself creates in law a
trust, or unless a relationship of trust and confidence necessarily results from the lessor-lessee
relationship, the standard of conduct of the lessee cannot be appropriately categorized as fiduciary
and thus cannot give rise to a duty of good faith and fair dealing. See Manges v. Guerra, 673 S.W.2d
180, 183-84 (Tex. 1984); Hurd Enters. Ltd. v. Bruni, 828 S.W.2d 101, 108 (Tex. App.--San
Antonio 1992, writ denied). Because the Greens have presented no evidence to suggest the existence
of a fiduciary relationship between themselves and Gemini, we agree with Gemini that, as a matter
of law, it owed no general duty of good faith and fair dealing to the Greens as a result of the parties'
oil and gas lease. Applying the appropriate standard of review for a traditional summary judgment,
we conclude that no fact issue exists. Cates, 927 S.W.2d at 626; Nixon, 690 S.W.2d at 548-49. 
Thus, we uphold the district court's grant of summary judgment and overrule the Greens' third issue.

 The Greens contend in their fourth issue that the district court erred in dismissing
their cause of action for fraud because they believe that Gemini made false representations of
material fact in obtaining the lease from them. To establish fraud, there must be a showing that: (1)
a false material representation was made; (2) at the time the representation was made, the speaker
either knew the representation was false or recklessly made it as a positive assertion despite having
no knowledge of the truth; (3) the speaker intended that the other party would rely on the
representation; and (5) the other party relied on the representation and suffered harm as a result. 
Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507, 524 (Tex. 1998). A
promise to perform an act in the future amounts to fraud if the promise is made with the intention
to deceive the other party and with no intention of performing the promised act. Spoljaric v.
Percival Tours, Inc., 708 S.W.2d 432, 434 (Tex. 1986). Because each of the elements of fraud are
necessary to sustain a cause of action, if Gemini can sustain a claim for "no evidence" summary
judgment on any of the elements, we will uphold the district court's judgment. See Johnson &
Higgins, 962 S.W.2d at 524.

 At the time of the district court's order, the only evidence in the record regarding
fraud consisted of testimony concerning the Greens' conversation with Gaffney in which Gaffney
allegedly stated that Gemini would either drill on their property or pool them with the Islet well. 
This conversation occurred three weeks after they signed the lease. The record shows that before
signing the lease, the Greens discussed only the price terms with Gemini. They do not allege fraud
on the basis that Gemini made false representations about the price of the lease. Additionally, the
Greens testified by deposition that no promises or representations were made to them about drilling
or pooling before or while they signed the lease. Thus, we agree with Gemini that no evidence was
produced that the Greens relied upon a false statement by Gemini when agreeing to sign the lease. 
A conversation that occurs three weeks after a lease is signed simply cannot sustain the Greens'
claim that Gemini made false representations to induce the Greens to agree to the lease. We
therefore uphold the district court's partial summary judgment dismissing the claim of fraud and
overrule the Greens' fourth issue.


The First Partial Summary Judgment

 In their first issue, the Greens argue that the district court erred in dismissing Edsel
because the district court failed to grant their motion for extension of time to supplement response
and because fact issues had been raised as to whether Edsel's role in Gemini allowed them to pierce
the corporate veil. The Greens present their complaint about the district court's failure to grant them
an extension as a prelude to their argument that issues of fact had been raised to maintain an
individual claim against Edsel. But the Greens provide no legal authority for reviewing the district
court's denial of their motion for extension of time. (3) Bare assertions of error, without citations to
authority, waive error. Tex. R. App. P. 38.1(h); Trenholm v. Radcliff, 646 S.W.2d 924, 937 (Tex.
1983); Schindler Elevator Corp. v. Anderson, 78 S.W.3d 392, 409 (Tex. App.--Houston [14th Dist.]
2001, pet. filed); see also Fredonia State Bank v. General Am. Life Ins. Co., 881 S.W.2d 279, 284
(Tex. 1994) (appellate court has discretion to waive issues due to inadequate briefing). To the extent
that the Greens assert this complaint as an issue, it has been waived. We will thus review the record
as it stands in our consideration of whether the district court properly dismissed Edsel.

 The Greens claim that Edsel is the alter ego of Gemini and thus should be liable for
the actions of the corporation in defrauding them "in obtaining the execution of their lease
agreement" and "in misrepresenting material facts concerning the production of the Iselt and Keng
wells." Their entire claim hinges on Edsel's status as shareholder and owner of Gemini. (4) In essence,
the Greens urge a theory of "piercing the corporate veil" in order to impose liability on Edsel as an
individual. In response, Gemini argues that to prevail on this point the Greens must have evidence
of actual fraud and that the Greens lack such evidence. Because the district court's order does not
specify the ground or grounds relied on for its ruling, we will affirm the summary judgment if any
of the theories Gemini advanced to the district court are meritorious. See Carr v. Brasher, 776
S.W.2d 567, 569 (Tex. 1989).

 Because this case involves an oil and gas lease, we approach the question of piercing
the corporate veil under the standards for contractual claims. See Tex. Bus. Corp. Act. Ann. art.
2.21A (West Supp. 2003). As a result, the Greens not only must prove alter ego status, but also must
show that Edsel caused Gemini to perpetrate an actual fraud in obtaining the lease for the direct,
personal benefit of Edsel. See Menetti v. Chavers, 974 S.W.2d 168, 173-74 (Tex. App.--San
Antonio 1998, no pet.). (5) In this case, the Greens only assert that fraud occurred but offered no
evidence in support of their claim. Simple assertions cannot defeat a no-evidence motion for
summary judgment. Because we have already found that the Greens' cause of action for fraud
against Gemini was properly dismissed, we need not further determine whether there existed
evidence of fraud for purposes of the Greens' piercing theory. (6) We conclude that the district court
correctly granted summary judgment in favor of Edsel and thus overrule the Greens' first issue.


The Third Partial Summary Judgment

 In their second issue, the Greens contend that the court's order on the second motion
for summary judgment precluded the court from considering Gemini's third motion for summary
judgment. In essence, the Greens claim that the district court erred by hearing a motion for partial
summary judgment on issues for which it had previously denied a similar motion. They also argue
that, even if the district court was not precluded from considering Gemini's third motion, the district
court erred in dismissing the Greens' claim for breach of implied covenant to reasonably administer
the lease.

 We must begin by considering whether the district court's order on the second motion
for summary judgment was entitled to collateral-estoppel effect. Collateral estoppel precludes the
relitigation of identical issues of fact or law that were actually litigated and essential to a judgment
in a prior suit. Van Dyke v. Boswell, O'Toole, Davis & Pickering, 697 S.W.2d 381, 384 (Tex. 1985). 
Therefore, to address this question, we must consider three factors: (1) whether the parties were
fully heard, (2) whether the court supported its decision with a reasoned opinion, and (3) whether
the decision was subject to appeal or was in fact reviewed on appeal. Mower v. Boyer, 811 S.W.2d
560, 562 (Tex. 1991).

 Regardless of the first two factors, here an analysis of the district court's order under
the third factor reveals that its summary judgment in this case was interlocutory. An order of
summary judgment is interlocutory if it is not final and appealable. Martinez v. Humble Sand &
Gravel, Inc., 875 S.W.2d 311, 312 (Tex. 1994). To be final and appealable, a judgment or order
must dispose of all parties and all issues. Id. Partial summary judgments are interlocutory and are
not presumed to be final and appealable. Id. (citing Mafrige v. Ross, 866 S.W.2d 590, 591 (Tex.
1993)). As a result, a trial court has the authority to change or modify a partial summary judgment
order until the judgment becomes final. See Rush v. Barrios, 56 S.W.3d 88, 98 (Tex.
App.--Houston [14th Dist.] 2001, pet. denied). The second partial summary judgment order was
clearly interlocutory. Because it granted summary judgment on four issues in the case but denied
it for two, it did not dispose of all parties and issues. As a result, it was not final and appealable. 
We agree with Gemini that the district court had the authority to modify the summary judgment order
in this case.

 We now turn to whether either Gemini or the Greens were entitled to summary
judgment on the issue of breach of a duty to manage and administer the lease. When both sides
move for summary judgment, as the parties did in this case, and the district court grants one motion
but denies the other, the reviewing court should review both sides' summary judgment evidence,
determine all questions presented, and render the judgment the district court should have rendered. 
Holy Cross Church of God in Christ v. Wolf, 44 S.W.3d 562, 566 (Tex. 2001).

 The Greens base their claim of a breach of a duty to manage and administer the lease
on two grounds. First, they argue that Gemini had a duty to pool their lease with the leases of
surrounding properties. (7) Generally, the duty to pool derives from the duty to protect the leasehold
from drainage rather than from the duty to manage and administer the lease. See Southeastern Pipe
Line Co. v. Tichacek, 997 S.W.2d 166, 170 (Tex. 1999); 1 Ernest E. Smith & Jacqueline Lang
Weaver, Texas Law of Oil and Gas §§ 5.3, .4 (1998). Although both parties argued extensively as
to whether there existed a duty to pool in this case, neither party specifically cited authority that the
duty to pool should be considered derivative of the duty to manage and administer the lease. 
Furthermore, because the district court denied both motions for summary judgment on the drainage
claim and allowed it to go to trial, we need not consider the duty to pool in the context of the duty
to manage and administer the lease. (8)

 Next, the Greens claim Gemini failed to seek favorable administrative action, though
they do not specify in their pleading what administrative action Gemini should have attempted. At
the very least, the duty to seek administrative relief describes a duty of the lessee to seek regulatory
permits and to seek exceptions to administrative rules regulating oil and gas production. See Amoco,
622 S.W.2d at 570. The standard of care in testing performance of the duty to seek administrative
relief is that of a reasonably prudent operator under similar facts and circumstances, and a lack of
probability of success may excuse a reasonably prudent operator from making these attempts. Id. 
Normally, a jury should determine if a reasonably prudent operator would have sought administrative
relief. Id. However, in Amoco, the plaintiffs specifically pleaded that the defendant drilling
company should have applied for spacing exceptions to Railroad Commission drilling regulations.
Id. at 569. Thus, Amoco indicates that an essential element to a claim of breach of a duty to seek
administrative relief is a pleading of the type of relief a prudent operator would have considered
before putting the question before the jury. Id. 

 Here, the Greens do not specify what administrative relief Gemini could have sought. 
As Gemini points out, it "did not breach any duty to the Greens because it never needed an exception
to any rules or regulations of the Texas Railroad Commission or any other administrative agency,
and the Greens never claimed that Gemini needed an exception." (9) Thus, the Greens fail to allege
an essential element of the duty. Because the Greens offer no other grounds for a cause of action
under the duty to manage and administer the lease, we overrule their second issue.


The Greens' Expert Witnesses

 The Greens argue in their fifth issue that the district court improperly limited the
testimony of their expert, Smith. The Greens assert that the district court should have allowed Smith
to testify as to a requirement to pool, a requirement to provide compensatory royalties, and a
requirement to release the lease. The admission or exclusion of evidence is committed to the trial
court's sound discretion. See City of Brownsville v. Alvarado, 897 S.W.2d 750, 753 (Tex. 1995). 
This determination will not be overturned absent a clear abuse of discretion. National Liab. & Fire
Ins. Co. v. Allen, 15 S.W.3d 525, 527-28 (Tex. 2000); Alvarado, 897 S.W.2d at 753; Waldrep v.
Texas Employers Ins. Ass'n, 21 S.W.3d 692, 703 (Tex. App.--Austin 2000, pet. denied). A trial
court abuses its discretion when it acts in an unreasonable and arbitrary manner, or when it acts
without reference to any guiding rules or principles. Beaumont Bank, N.A. v. Buller, 806 S.W.2d
223, 226 (Tex. 1991); Waldrep, 21 S.W.3d at 703.

 When the Greens offered Smith as an expert, the court determined that he was
certified as an expert only for his knowledge in the field of petroleum engineering, not for
knowledge of the law or Railroad Commission regulations. The court then examined him to
determine the content of his testimony in each of these areas and heard arguments from both parties. 
In examining the case law, the court decided that a requirement to pool, a requirement to provide
compensatory royalties, and a requirement to release the lease were legal not factual questions. (10) The
district court primarily relied on Amoco to conclude that only two factual issues existed for a
petroleum engineer expert witness: (1) whether substantial drainage occurred and, (2) if so, whether
a reasonably prudent operator could have drilled an offset well with a reasonable expectation of
profit. 622 S.W.2d at 568. Therefore, it excluded Smith's testimony as to other matters. We find
the district court's reading of Amoco to be reasonable. In reviewing the record, then, we find that
the district court did not act in an unreasonable or arbitrary manner, and we thus overrule the Greens'
fifth issue.

 The Greens argue in their sixth issue that the district court erred when it excluded the
testimony of Williams concerning drainage because it improperly characterized Williams, an oil and
gas operator, as a lay witness rather than an expert witness. A court can properly restrict the
testimony of a witness to factual matters if the witness is not designated as an expert during
discovery. Tex. R. Civ. P. 194.2; Vingcard A.S. v. Merrimac Hospitality Sys., Inc., 59 S.W.3d 847,
856 (Tex. App.--Fort Worth 2001, pet. denied). Here, the Greens sought to have Williams testify
that he had considered leasing the Greens' property after the expiration of Gemini's lease but
ultimately did not lease the property because of determinations he had made concerning possible
drainage of the property. The district court limited his testimony to his decision not to lease the
property and excluded his opinion testimony as to possible drainage because the Greens had not
offered him as an expert witness during discovery. We hold that the court's ruling concerning
Williams was within its discretion, and therefore overrule the Greens' sixth issue. (11)


Gemini's Expert Witnesses

 In their seventh issue, the Greens argue that the district court improperly failed to
disqualify the three expert witnesses offered by Gemini: Edsel, Carver, and Wagner. In the
alternative, they argue that the district court should have limited the experts' testimony, should have
limited the documents upon which the experts could rely, or should have permitted the Greens to
conduct a voir dire of the experts under rule 705(b) of the Texas Rules of Evidence.

 First, the Greens argue that the district court should have disqualified Gemini's
experts because their professional relationships with Gemini misled the jury. (12) See Tex. R. Evid.
403. We disagree. The court heard testimony regarding the qualifications of each of the experts
outside of the presence of the jury. Edsel testified from his experience as a drilling operator in the
Giddings (Austin Chalk 3) Field. Wagner is a petroleum geologist who worked professionally
examining wells on site, also in the Giddings (Austin Chalk 3) Field. Carver is a petroleum engineer
with experience in drilling horizontal wells. Each of these witnesses testified about his former or
current relationship with Gemini. Each testified within his areas of expertise. The Greens had full
opportunity to cross-examine each of the witnesses in front of the jury and to elicit testimony
concerning their relationships with Gemini. We hold that the district court did not abuse its
discretion by allowing Gemini's expert witnesses to testify.

 Next, the Greens claim that the district court should have limited the testimony of
each of the witnesses. However, the Greens do not cite to passages of testimony that were improper
or argue why those sections of testimony may have been improper. We consider this argument
inadequately briefed and thus waived. See Tex. R. App. P. 38.1(h).

 Third, the Greens argue that the district court should have limited the documents upon
which the experts relied. In support of this argument, the Greens refer to the use of a report of
reserve estimates and drainage calculations for the Keng and Iselt wells prepared and used by Carver. 
The Greens established on the record that Carver had not submitted the report to them prior to his
appearance in court, but the Greens did not object to him referencing the report during his testimony. 
To preserve a complaint for appellate review, a party must present to the trial court a timely request,
motion, or objection, state the specific grounds therefore, and obtain a ruling. Tex. R. App. P.
33.1(a)(1)(A); Holland v. Wal-Mart Stores, Inc., 1 S.W.3d 91, 94 (Tex. 1999). Therefore, we find
that the Greens did not preserve this complaint.

 Lastly, the Greens argue that the court improperly denied them the opportunity to
conduct a voir dire of Gemini's expert witnesses. See Tex. R. Evid. 705(b). (13) For us to reverse the
trial court on this point, we must find an error that probably caused the rendition of an improper
judgment. Tex. R. App. P. 44.1(a)(1). The Greens do not argue in their briefs which statements they
would have sought to exclude from the jury had they had the opportunity to conduct a voir dire. 
They also do not argue how any error we may find here affected the judgment in their case. As a
result, we have no basis upon which to review the district court's decision. We overrule the Greens'
seventh issue. 


Jury Charge

 In their eighth issue, the Greens attack the first question submitted to the jury in the
charge of the court. The question appeared as follows:


Question No. 1


 After October 30, 1992, did Gemini breach its duty to protect the Greens'
lease from drainage?


 Gemini breached its duty to protect the Greens' lease from drainage only if
(1) the drainage from the Greens' lease was substantial and (2) a reasonably prudent
operator would have acted to prevent the drainage.


 A reasonably prudent operator would have acted to prevent the drainage only
if the value of the oil and gas reasonably expected to be recovered by drilling a well
on the Greens' property would have equaled the reasonably expected costs of drilling
and producing and marketing the oil and gas plus a reasonably expected profit to the
operator.



First, the Greens argue that the form of the question was improper because it posed a question of law
by asking the jury to determine if there was a breach of the duty to protect from drainage. The
Greens cite Emmord's, Inc. v. Obermiller for the proposition that the use of the word "breach" in a
jury charge necessarily renders the charge improper for asking a question of law. 526 S.W.2d 562,
566 (Tex. Civ. App.--Corpus Christi 1975, writ ref'd n.r.e.). In response, Gemini argues that under
the broad-form submission preference of Texas courts, the charge correctly outlined a question of
fact for the jury. 

 A trial court has discretion to submit issues broadly to the jury. Tex. R. Civ. P. 277. 
In addition, the Texas Supreme Court urges trial courts to take advantage of this discretion and to
submit the controlling issues in a case in broad form so as to simplify a jury's chore. See Harris
County v. Smith, 96 S.W.3d 230, 235-37 (Tex. 2002) (reaffirming supreme court's "fundamental
commitment" to broad-form submission); Island Recreational Dev. Corp. v. Republic of Tex. Sav.
Ass'n, 710 S.W.2d 551, 555 (Tex. 1986). The trial court may give such information and definitions
which are proper. Tex. R. Civ. P. 273. The trial court may also use legal terms in broad form
submissions to identify the single issue that the jury needs to determine. See Keech v. Kroger Corp.,
845 S.W.2d 262, 266 (Tex. 1992) (approving submission of general negligence question to jury
when accompanied by appropriate instructions); Cabot Corp. v. Brown, 754 S.W.2d 104, 108 (Tex.
1987) (approving submission of broad legal issue that includes combination of elements when broad
issue is controlling question). 

 Here, the single factual issue that existed was whether there was a breach of a duty,
not a legal question of the existence of a duty. The district court carefully submitted with this factual
issue the elements that the jury would need to examine to make that determination: the two factual
elements which would determine the answer to that question and a definition of "reasonably prudent
operator." Our examination of the charge leads us to conclude that the district court constructed a
question which outlined the relevant factual issues in broad form and offered relevant definitions to
aid the jury in its determination. We refuse to find that the word "breach," taken out of the context
of the charge as a whole, would defeat the validity of the charge. See Keech, 845 S.W.2d at 266;
Cabot Corp., 754 S.W.2d at 108. As a result, we agree with Gemini that the question was
appropriate in form. 

 Next, the Greens argue that the jury question was flawed in its definition of
"reasonably prudent operator." The Greens assert that the district court erred in two ways: in failing
to include pooling as an alternate means of measuring the duty and in including the element of profit
as an element for the plaintiffs to prove. We disagree. An action on a lessee's duty to protect the
leasehold from drainage requires proof (1) of substantial drainage of the lessor's land and (2) that
a reasonably prudent operator would have acted to prevent that substantial drainage. Amoco, 622
S.W.2d at 568. No duty exists unless the value of oil or gas that can be recovered equals the cost
of administrative expenses, drilling or re-working and equipping a protection well, producing and
marketing the oil or gas, and yields a reasonable expectation of profit to the lessee. Id. Then, if a
duty does exist, a lessee may employ various methods to satisfy its duty to protect the leasehold from
drainage, depending on the circumstances. Id. One of these methods may be to exercise its
contractual pooling authority and combine tracts from two or more leases into a single unit around
an existing well. Tichacek, 997 S.W.2d at 170. However, if no duty exists, there can be no breach
and therefore no duty to pool can arise. The cost of drilling a well stands as one factor among many
that a reasonably prudent operator would consider when confronted with the financial question of
what to do with a particular lease. The question of pooling arises only after a fact-finder has
considered the cost factor and determined that a duty exists. A failure to pool is not itself a factor
in determining the existence of a duty to protect the leasehold from drainage.

 The jury charge in this case mirrors the language of Amoco. 622 S.W.2d at 568. It
establishes that the cost of drilling a well is an important factor in determining a violation of the
reasonably prudent operator standard. Id. Thus, it accurately reflects the legal standards of the duty
to protect the lease from drainage. As a result, it would be inappropriate for the jury to consider
pooling before or in conjunction with the question of whether there has been a breach of the duty to
protect the leasehold from drainage. Because the jury found that no duty was breached, the question
of a duty to pool need not arise. 

 Finally, the Greens argue two further flaws in the jury charge: (1) that it failed to state
the question of whether substantial drainage occurred, and (2) that it incorporated by reference an
inferential rebuttal issue in violation of rule 277 of the Texas Rules of Civil Procedure. To preserve
error, parties must make all objections to the jury charge before the charge is read to the jury; all
objections not so presented are waived. See Tex. R. Civ. P. 272; Tex. R. App. P. 33.1(a). An
objecting party must point out distinctly the objectionable matter and the grounds of the objection. 
See Tex. R. Civ. P. 274. For an objection to be valid, the party must make the court aware of the
complaint, timely and plainly, and obtain a ruling. See State Dep't of Highways & Pub. Transp. v.
Payne, 838 S.W.2d 235, 241 (Tex. 1992). At trial, the Greens did not object to the jury charge on
either of these grounds. Thus, they have not preserved their objection to the jury charge on the basis
of substantial drainage or the presence of an inferential rebuttal issue and we do not consider either
of these arguments. We overrule their eighth issue.

 In their ninth issue, the Greens argue that the district court erred in failing to submit
their proposed charge to the jury. However, the Greens cite no legal authorities as a basis for their
complaint. They offer no legal analysis of the points. Under these circumstances, we conclude that
they have failed to adequately brief these errors. Tex. R. App. P. 38.1(h). Thus, we overrule their
ninth issue.


Outside Influence

 In their tenth issue, the Greens argue that jury misconduct arose because of outside
influences on the jury. Gemini responds that the evidence of outside influence only includes a
comment one of the jurors made after the jury had agreed on a verdict and so does not amount to
evidence of outside influence. We agree with Gemini.

 If a party shows that misconduct by the jury occurred, that the misconduct was
material and that, based on the whole record, it probably resulted in harm, that party can obtain a new
trial. Tex. R. Civ. P. 327(a); Golden Eagle Archery, Inc. v. Jackson, 24 S.W.3d 362, 372 (Tex.
2000). The rule allows jurors to testify about outside influences on their deliberations. Tex. R. Civ.
P. 327(b). An "outside influence" emanates from sources other than the jurors themselves and so
does not include opinions or experiences that individual jurors may offer while participating in
deliberations. Golden Eagle Archery, 24 S.W.3d at 370. "Deliberations" means the formal jury
deliberations--the stage in trial after the court has charged the jury but before it has returned a
verdict. Tex. R. Civ. P. 287, 327; Golden Eagle Archery, 24 S.W.3d at 371.

 The Greens offer evidence of jury misconduct in the form of question-and-answer
affidavits submitted by three of the jurors. Specifically, they point to the answers to one question
that they posed to jury members after trial: 


After the vote was taken did you hear another juror say that he had his land leased
and all your rights had to be expressly written in the lease?

Two jurors answered in the affirmative. (14) The Greens argue that the juror's comment amounted to
jury misconduct. (15) Whatever statement was made or opinion offered during the jury deliberations,
the evidence reflects that it came from one of the jurors. As a result, it cannot be described as an
"outside influence." Golden Eagle Archery, 24 S.W.3d at 370. Because the Greens present no other
evidence of jury misconduct, we overrule their tenth issue.


CONCLUSION

 For the reasons set forth above, we overrule the Greens' issues on appeal. We affirm
the judgments of the district court.



 

 W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed: May 1, 2003
1. At that time, the Keng well had been drilled and completed, and the Islet well had been
drilled and was within one day of completion.
2. "Mud logs" refer to the records an on-site geologist or petroleum engineer keeps at an oil
and gas well. They include information about drilling rate, fluorescence of samples, fractures, gas,
flares, and pressure readings. An expert reviewing "mud logs" can draw conclusions about the
presence and quantities of oil and gas in a well as well as rates of flow and drainage.
3. The Greens do not cite the Texas Rules of Civil Procedure, local rules or case law to
indicate what procedural error the district court may have committed. They also report in their brief
that the district court denied their request when granting the first motion for partial summary
judgment. The record, however, does not reflect a ruling on their motion.
4. The Greens do not claim that Edsel was personally involved with their lease.
5. The briefing in this case reflects confusion in this area of the law. While Gemini seems to
argue a common-law definition of fraud, the Greens vaguely argue what amounts to a constructive
fraud standard. See Menetti v. Chavers, 974 S.W.2d 168, 173 (Tex. App.--San Antonio 1998, no
pet.). The constructive fraud standard was important in the cases cited by the Greens. However, the
legislature amended the statute in 1993 and now requires a showing of actual fraud. Tex. Bus. Corp.
Act Ann. art. 2.21A (West Supp. 2003); Menetti, 974 S.W.2d at 174. Even though the parties
formed this lease before 1993, the legislature provided that the amendment applied to obligations
entered into before, on or after the effective date of the amendment. See Act of May 2, 1993, 73d
Leg., R.S., ch. 215, § 2.26, sec. 2.21A, 1993 Tex. Gen. Laws 418, 459-60.
6. We note that the district court granted summary judgment for Gemini on the fraud cause
of action in 2000, two and a half years after the court granted summary judgment in favor of Edsel. 
Certainly, the Greens had ample opportunity to discover evidence of fraud in that period of time. 
Because we decide that there was no evidence of fraud in 2000, we will not further discuss the
question of whether there was evidence of fraud in 1997 when the district court considered the claim
against Edsel.
7. "Pooling" occurs when a lessee exercises its contractual pooling authority to combine tracts
from two or more leases into a single unit around an existing well. See Southeastern Pipe Line Co.
v. Tichacek, 997 S.W.2d 166, 170 (Tex. 1999) (citing London v. Merriman, 756 S.W.2d 736, 739
n.1 (Tex. App.--Corpus Christi 1988, writ denied). Pooling is a common protective measure
employed to satisfy the duty to protect the leasehold from drainage. Id. The primary legal
consequence of pooling is that production and operation anywhere on the pooled unit are treated as
if they have taken place on each tract within the unit. Id. (citing Southland Royalty Co. v. Humble
Oil & Ref. Co., 249 S.W.2d 914, 916 (Tex. 1952). Thus, there can no longer be drainage of the
individual leases by a unit well, only drainage of the unit by wells located outside the unit. Id. (citing
Southland, 249 S.W.2d at 916).
8. In addition, the lease expressly renunciated an obligation to pool. Therefore, even if a duty
to pool could derive in this case from a duty to manage and administer the lease, we would still have
to find that no implied duty to pool existed in this lease. See Yzaguirre v. KCS Resources, Inc., 53
S.W.3d 368, 373 (Tex. 2001).
9. In fact, Smith, the Greens' own expert, stated that Railroad Commission field rules allowed
flexibility in the creation of units. Gemini, according to Smith, did not need to seek any
administrative relief to include the Greens' lease in either the Keng or Iselt units, the remedy the
Greens would have been seeking.
10. First, the district court determined that Texas law does not provide for compensatory
royalties, as a duty to provide compensatory duties would stand opposite to the reasonably prudent
operator standard. Amoco Prod. Co. v. Alexander, 622 S.W.2d 563, 572 (Tex. 1983). Second, the
district court considered the question of pooling and heard from Smith that he would only testify
about amending the existing units to include the Greens' lease in another unit. The court concluded
that testimony about pooling would concern only legal questions. Id. Finally, the court concluded
that releasing the lease was a legal matter concerning the lease itself and not a factual question within
Smith's realm of expertise as a petroleum engineer. 
11. The Greens raise in their sixth issue two additional points. First, they argue that the
district court erred in permitting Gemini's experts to testify about certain documents not produced
during discovery. Because they raise this complaint again in their seventh issue, we will not address
it here. Second, they state that the district court erred in "limiting the testimony of James Edsel,"
the brother of Robert Edsel and a former Gemini employee. Because the Greens do not further
discuss this point in their brief, it is waived and we will not consider it.
12. Edsel is the president and owner of Gemini. Carver and Wagner are both former
employees of Gemini.
13. We note here that the language of the rule is permissive and not mandatory in a civil
context. The rule provides:


Prior to the expert giving the expert's opinion or disclosing the underlying facts
or data, a party against whom the opinion is offered upon request . . . in a civil
case may . . . be permitted to conduct a voir dire examination directed to the
underlying facts or data upon which the opinion is based. 


Tex. R. Evid. 705(b) (emphasis added). The case law is unclear as to standards of review for rule
705(b) rulings in a civil context, and none of the cases cited by either party in their briefs addresses
this rule. Because we ultimately find that the Greens do not show in what way the court's denial of
their request affected their case, we do not reach this problem.
14. The record contains the affidavits of three jurors. One juror answered "yes" and added
that another juror "said he had one year options in his leases so that if a company had not drilled in
a year he could always get out of the lease." Another juror answered "yes." The third answered
"no." 
15. The Greens intend to argue either that one juror had opinions that influenced the
deliberations and the source of those opinions was revealed after deliberations or that the statement
itself was made during deliberations. Because both possibilities result in an analysis of an alleged
influence during deliberations, the rule 327(b) approach applies.